STATE OF NORTH CAROLINA v. ALTON REID HOYLE, JR.

No. 432A88

(Filed 6 September 1989)

1. **Constitutional Law § 76; Criminal Law § 48.1— comment on defendant's silence — closing argument on defendant's silence — prejudicial error**

    The trial court erred in a prosecution for first degree murder by allowing the prosecutor to ask certain questions regarding defendant's post-arrest silence and to refer to defendant's silence in his closing argument before the jury. The State did not demonstrate beyond a reasonable doubt that it was harmless to attack the credibility of defendant by improper evidence which was reinforced by the jury argument.

    **Am Jur 2d, Trial § 254.**

2. **Criminal Law § 75.7— statement prior to Miranda warnings — inadmissible**

    The trial court erred in a first degree murder prosecution by admitting into evidence a statement by defendant where officers went to defendant's home; defendant agreed to go to police headquarters; defendant started towards his closet to get his coat; an officer stopped him and got his coat for him; one of the officers took into his possession a pistol that was on a nearby shelf; defendant asked the officers if they had a warrant and was informed that they did not; one of the officers then told defendant that he would obtain a warrant and leave an officer at the defendant's home until a warrant could be procured; defendant then went with the officers; and, as they were leaving defendant's home, one of the officers asked defendant how long he had been at home, to which the defendant replied, "all night." Defendant was deprived of his freedom in a significant way when an officer told him that he would get a warrant for him and would leave an officer at defendant's home until a warrant could be procured and it was necessary to advise him of his rights for his answer to be introduced into evidence.

    **Am Jur 2d, Evidence § 614.**

STATE v. HOYLE

[325 N.C. 232 (1989)]

**3. Homicide § 21.5— first degree murder—evidence sufficient**

The evidence was sufficient for the jury to find beyond a reasonable doubt all the elements of first degree murder in a prosecution in which a new trial was awarded on other grounds where the State's evidence showed that defendant and the victim were in a restaurant in Asheville with two other persons; the two other persons left the restaurant and shortly thereafter the defendant and the victim left; defendant entered his truck in the restaurant parking lot, leaving the victim standing on the passenger side of the truck; the defendant was seen pointing a gun at the victim, who walked around the front of the truck and leaned against the window on the driver's side; defendant left the parking lot in his truck a few minutes later; the victim was found lying in the parking lot with a bullet wound in his head; officers went to defendant's residence and carried him to police headquarters, where defendant answered some questions but replied when asked what happened when the victim followed him to the truck that he would rather not say without talking to his lawyer; defendant testified that he had argued with the victim and told the victim he would not give him a ride to his home; the victim entered on the passenger side when defendant entered the truck on the driver's side and struck defendant in the face with a glass; defendant then left the truck and the victim followed, kicking defendant in the back and head; defendant returned to his truck and retrieved his pistol from the floor of the truck; the victim leaned through the open window and grabbed defendant around the neck while defendant was searching for the keys to the truck; and the gun went off while the two struggled for the gun.

**Am Jur 2d, Homicide §§ 45 et seq.**

Justice MEYER dissenting.

APPEAL as of right by the defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a life sentence entered by *Hyatt, J.,* at the 18 April 1988 Criminal Session of Superior Court, BUNCOMBE County. Heard in the Supreme Court 10 April 1989.

The defendant was tried for first degree murder. The State's evidence showed that the defendant and Terry Kicinski were in T. K. Tripps, a restaurant in Asheville, with two other persons

on the evening of Friday, 20 November 1987. The other two persons left the restaurant and shortly thereafter the defendant, followed by Terry Kicinski, left. The defendant entered his truck in the restaurant parking lot, leaving Mr. Kicinski standing on the passenger side of the truck. The defendant was seen pointing a gun at Mr. Kicinski who walked around the front of the truck and leaned against the window on the driver's side. The State's evidence showed that the defendant left the parking lot in his truck a few minutes later. A short time later Terry Kicinski was found lying in the parking lot with a bullet wound in his head. He died approximately twelve hours later.

Officers of the City of Asheville Police Department went to the defendant's residence that night and carried him to police headquarters. The evidence showed that at the police headquarters the officers advised the defendant of his constitutional right to remain silent and to have an attorney. The defendant told the officers he would not sign a waiver of his rights without a lawyer being present but that he would answer questions. The defendant answered some of the questions of the officers but when they asked him "what happened when the male followed him to his truck?" he replied he would "rather not say without having talked with his lawyer." The officers did not question him further about this.

The defendant testified at the trial that he had argued with Mr. Kicinski and had told Mr. Kicinski he would not give him a ride to his home. When the defendant entered the truck on the driver's side, Terry Kicinski entered on the passenger side and struck the defendant in the face with a glass. Next, according to the defendant, he left the truck and Mr. Kicinski followed, kicking the defendant in the back and head. The defendant returned to his truck and retrieved his pistol from the floor of the truck. While the defendant was searching for the keys to the truck, Mr. Kicinski leaned through the open window and grabbed the defendant around the neck. The two men struggled for the gun and it discharged, hitting Mr. Kicinski.

The defendant was convicted of first degree murder. The State offered no evidence in aggravation of the crime and the defendant was sentenced to life in prison. He appealed.

STATE v. HOYLE

[325 N.C. 232 (1989)]

*Lacy H. Thornburg, Attorney General, by David F. Hoke, Associate Attorney General, for the State.*

*Elmore & Powell, P.A., by Bruce A. Elmore, Sr. and Shirley H. Brown, for defendant appellant.*

WEBB, Justice.

[1] We address first the defendant's assignment of error as to whether the court erred in allowing the prosecutor to ask certain questions regarding defendant's post-arrest silence.

At trial, the prosecutor repeatedly questioned Detectives Jenkins and Dayton and the defendant about whether the defendant had ever informed anyone that Terry Kicinski had attacked him on the night of the incident. The following are excerpted portions of the interchange that took place between the prosecutor and Detective Jenkins.

Q: Did he mention anything about any attack by anyone whatsoever at all?

A: No.

MRS. BROWN: Objection.

COURT: Overruled.

Q: Did he ever tell you on that occasion or the next day that Terry Kicinski had done anything at all to him?

MRS. BROWN: Objection.

COURT: Sustained.

Q: Did he tell you that Terry Kicinski attacked him?

MRS. BROWN: Objection.

COURT: Sustained.

Similar questions were asked of the defendant:

Q: Mr. Hoyle, you never recontacted the police officers and gave them this story that you have just given these jurors here today have you?

A: I beg your pardon?

STATE v. HOYLE

[325 N.C. 232 (1989)]

Q: You never got back in touch with any of these police officers and told them what you have told these jurors today about what Terry Kicinski did?

MR. ELMORE: Objection.

COURT: Objection sustained.

Q: You never mentioned the night or early morning hours of the 21st when you agreed to answer questions that you had been attacked in any way, did you?

MR. ELMORE: Objection.

COURT: Overruled.

A: No, I did not.

Q: And you complained of no injuries?

A: No, I did not.

Finally, the prosecutor made reference to defendant's silence when he made his closing argument before the jury:

Who said anything, until yesterday, about Terry Kicinski having grabbed his gun? Who? When was there an opportunity to say that? For months and that night. You think what you would do. If somebody had severely beaten you, if somebody had caused you to think that you had to defend yourself, if somebody had struggled with you over a gun and had accidently shot themselves, don't you think, when the police were there and polite and nice and trying to get to the truth . . . don't you think you would tell him then?

The United States Supreme Court held in *Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed.2d 91 (1976), that when a person under arrest has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694 (1966), which includes the right to remain silent, there is an implicit promise that the silence will not be used against that person. The Court in *Doyle* held it is a violation of a defendant's rights under the Fourteenth Amendment to the Constitution of the United States to then impeach the defendant on cross-examination by questioning him about the silence.

We hold that the rule of *Doyle* was violated in this case. The defendant told the officers he would not answer questions

as to what happened when Terry Kicinski followed him to the truck. He had a constitutional right not to answer such questions and *Doyle* holds it was a violation of this right for his silence to be used against him. The questions of the district attorney and the argument to the jury as to the defendant's failure to tell the police of his defense were in violation of *Doyle*.

In *State v. Lane*, 301 N.C. 382, 271 S.E.2d 273 (1980) this Court held it was prejudicial error to allow a defendant to be cross-examined as to why he did not tell the officers of the alibi he used at trial. We said that the defendant had the right under article I, section 23 of the Constitution of North Carolina as well as the Fifth Amendment to the Constitution of the United States made applicable to the states by the Fourteenth Amendment to remain silent and "any comment upon the exercise of this right, nothing else appearing, was impermissible." Under *Lane* it was error to comment on the defendant's silence in this case. *See also State v. Freeland*, 316 N.C. 13, 340 S.E.2d 35 (1986); *State v. Williams*, 288 N.C. 680, 220 S.E.2d 558 (1975); *State v. Castor*, 285 N.C. 286, 204 S.E.2d 848 (1974).

The State contends that if it was error to allow the questions and the jury argument it was not prejudicial. N.C.G.S. § 15A-1443(b) provides:

A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

In this case there was not an eyewitness to the shooting other than the defendant. His defense depended on the jury's acceptance of his version of the event. The State has not demonstrated beyond a reasonable doubt that it was harmless to attack the credibility of this version by improper evidence, which improper evidence was reinforced by jury argument. We hold this was prejudicial error requiring a new trial. *See State v. Silva*, 304 N.C. 122, 282 S.E.2d 449 (1981).

[2] In another assignment of error the defendant contends it was error to admit into evidence a statement he made at his home shortly before he was taken to police headquarters. When the officers were at the home of the defendant he agreed with them

to go to police headquarters. At that time the defendant started towards his closet to get his coat. The officers stopped him and got his coat for him. One of the officers took into his possession a pistol that was on a nearby shelf. The defendant asked the officers if they had a warrant and was informed that they did not. One of the officers then told the defendant he would obtain a warrant and would leave an officer at the defendant's home until a warrant could be procured. The defendant then went with the officers. As they were leaving the defendant's home one of the officers asked the defendant how long he had been at home to which the defendant replied, "all night." It is to the admission of this statement that the defendant assigns error.

When a person is taken into custody or otherwise deprived of his freedom by the authorities in any significant way he must be advised of his rights to remain silent and to have counsel before any responses he may make to interrogation may be introduced in evidence. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694; *State v. Biggs*, 292 N.C. 328, 233 S.E.2d 512 (1977); *State v. McLean*, 294 N.C. 623, 242 S.E.2d 814 (1978). We hold that when an officer told the defendant that he would get a warrant for him and would leave an officer at the defendant's home until the warrant could be procured, the defendant was deprived of his freedom in a significant way. It was necessary to advise him of his rights before his answer to the question as to how long he had been at his home could be introduced into evidence. In light of our holding that the defendant must have a new trial on other grounds, we need not determine whether this error was so prejudicial as to require a new trial.

[3] The defendant has also assigned error to the denial of his motion to dismiss at the close of all the evidence. We hold that the evidence as recited in this opinion was sufficient for a jury to find beyond a reasonable doubt all the elements of first degree murder. *State v. Robbins*, 275 N.C. 537, 169 S.E.2d 858 (1969).

The defendant has made numerous other assignments of error. We have examined them and they are either without merit or the questions they raise may not recur at a new trial.

New trial.

**STATE v. HOYLE**

[325 N.C. 232 (1989)]

Justice MEYER dissenting.

A fuller recitation of the pertinent facts is necessary to an understanding of my view of this case.

At the hospital where the victim was treated, detectives learned from the victim's brother that, earlier in the evening, the victim had left a private club with the defendant to go to T.K. Tripps. Following up on this information, the detectives and officers went to defendant's home where they found a vehicle in the driveway that matched the description of the vehicle seen at the scene of the crime. The detectives knocked on the front door of the house, and defendant's wife invited them in. When defendant joined them, the detectives told him that they were investigating an assault. Upon the detectives' request, defendant agreed to accompany them to the station for questioning. Preparing to leave, defendant moved toward the closet door. One of the detectives saw that a gun was lying upon a desk beside the closet door, picked it up, and gave it to another officer, who unloaded it. Then an officer got defendant's coat from the closet. Defendant asked one of the detectives if he had a warrant, to which the detective responded that he did not but would leave an officer with defendant while he obtained one. Defendant pursued this no further. As they were leaving the home, a detective asked defendant how long he had been at home, and defendant replied, "All night."

The police asked defendant no questions on the trip from defendant's house to the station. Upon arrival at the station, the detectives read defendant his *Miranda* rights, and defendant acknowledged that he understood them. Defendant refused to sign a waiver of rights form without having an attorney present, but he said that he would answer the detectives' questions. Defendant then answered questions concerning the events of the previous evening. He stated that he had left T.K. Tripps alone but that a man had followed him to his truck and had tried to get into the passenger side. The detective then asked defendant what had happened to the man. Defendant responded that "he had rather not say without having talked with his lawyer." However, defendant said that he would answer any other questions. More questioning occurred, and the interview ended after approximately twenty-five minutes. Defendant was not handcuffed during the questioning and was allowed to go to the rest room.

STATE v. HOYLE

[325 N.C. 232 (1989)]

After the hearing on defendant's motion to suppress the statements he had made before being given his *Miranda* warning, the trial judge concluded that none of defendant's constitutional rights had been violated; that all of defendant's statements had been made "freely, voluntarily and understandingly"; and that defendant had "freely, knowingly, intelligently and voluntarily" waived his right to remain silent. Contrary to the majority's view, I fail to find any error on the part of the trial court. The majority analyzed two issues, which, for the sake of convenience, I will address in reverse order.

The second issue the majority addressed was whether the trial judge erred in admitting into evidence the statement made by defendant shortly before he accompanied the officers to the police station to the effect that he had been home all night. The majority concludes that the trial judge erred. I disagree. In order for defendant's responses to police interrogation to be admissible into evidence, the police must advise him of his right to remain silent after he is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and before any police interrogation. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966). Here, the majority reasoned that defendant was significantly deprived of his freedom when the detective told defendant (after defendant freely and voluntarily agreed to go to the station to answer some questions) that he would get a warrant for defendant, if defendant wanted a warrant, while another officer waited for the detective to return with the warrant. The majority asserts that this statement of the detective and the removal of defendant's gun from his reach when he moved toward the closet to get his coat are proof of a "coercive atmosphere"; that defendant was thus "in custody"; and that, therefore, his statement that he had been at home all night was inadmissible. I disagree.

*Miranda* "warnings are not required when defendant is not in custody or otherwise deprived of his freedom of action in any significant way." *State v. Biggs*, 292 N.C. 328, 333, 233 S.E.2d 512, 515 (1977). In deciding whether a defendant is "in custody," the United States Supreme Court has stated that a court may look to all the circumstances of the case. *California v. Beheler*, 463 U.S. 1121, 77 L. Ed. 2d 1275 (1983). However, the Supreme Court further explained:

Although the circumstances of each case must certainly influence a determination of whether a suspect is "in custody"

for purposes of receiving Miranda protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. *Mathiason, supra,* at 495, 50 L Ed 2d 714, 97 S Ct 711.

*Id.* at 1125, 77 L. Ed. 2d at 1279. The deciding factor is whether there is a formal arrest or the functional equivalent of a formal arrest.

In *Oregon v. Mathiason,* 429 U.S. 492, 50 L. Ed. 2d 714 (1977), the United States Supreme Court further defined "custodial interrogation." In *Mathiason,* defendant voluntarily met an officer in the police patrol office to discuss a theft under investigation. The officer told defendant he was not under arrest. Defendant followed the officer into an office, where the officer asked defendant about his knowledge of the theft. The officer told defendant that defendant was a suspect and falsely told defendant that the police had discovered his fingerprints at the crime scene. A few minutes later, defendant confessed to the burglary. The officer then gave defendant a *Miranda* warning and taped defendant's confession. The officer did not arrest defendant but allowed him to go home. Based on these facts, the United States Supreme Court held that there had not been a "custodial interrogation." Defendant had not had his freedom restricted, he had come to the police office voluntarily, and he had not been placed under arrest. Finally, the Court stated:

Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment." Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the . . . questioned person is one whom the police suspect.

*Id.* at 495, 50 L. Ed. 2d at 719. Thus, a "coercive environment" is not determinative of whether questioning is conducted "in custody."

The fact situation in *Mathiason* was much more coercive than the situation in the case at bar.

In *State v. Biggs*, 292 N.C. 328, 233 S.E.2d 512, the police responded to a report of a stabbing. Once on the scene, they could not find the victim. Directed to defendant's house as a place to look for the victim, the deputy sheriff found defendant and his father and brother. The deputy sheriff asked defendant if he had been at the victim's house that night, and defendant replied, "yes." Defendant, who had not been formally arrested at this point, agreed to accompany the deputy sheriff to the victim's house to help locate her. The deputy asked defendant if he had a knife. Defendant said, "yes," and gave the knife to the deputy. On their way back to the victim's house, defendant asked the deputy if the victim was in the house. The deputy said that she was not. Defendant responded, "I don't see how the bitch could go any place the way she was hurt." *State v. Biggs*, 292 N.C. at 331, 233 S.E.2d at 514. Based on the above facts, the trial court concluded, and this Court agreed, that defendant had made the above statements "freely and voluntarily and in a noncustodial situation." *Id.* at 333, 233 S.E.2d at 514. This Court reasoned that there was no "in-custody" interrogation because the defendant was not under arrest nor was his freedom significantly restricted.

In *State v. Meadows*, 272 N.C. 327, 158 S.E.2d 638 (1968), this Court held that the questioning of defendant by police officers at the scene of a shooting did not constitute "in-custody interrogation." Having been informed of a shooting, the officers went to the scene to investigate. When they arrived they saw the victim lying in defendant's yard. The victim was bleeding from a gunshot wound to his neck. When an officer asked defendant what had happened, defendant replied that he had shot the victim. When the officer asked why, defendant explained. Defendant's responses were allowed into evidence, and this Court ruled that the evidence had been properly admitted, holding that there had been no "in-custody interrogation" of defendant because defendant was not under arrest or in custody when he made the statement. Additionally, the Court concluded that the police were merely conducting an investigation to determine whether a crime had been committed by the defendant, who was a suspect when the officer questioned him. This Court stated:

> A general investigation by police officers, when called to the scene of a shooting, automobile collision, or other occur-

rence calling for police investigation, including the questioning of those present, is a far cry from the "in-custody interrogation" condemned in *Miranda.*

*Id.* at 337, 158 S.E.2d at 645.

The majority holds that when the officer told defendant that he would get a warrant for him and would leave an officer there until it was procured, defendant was in custody and that this single question was "custodial interrogation." As in *Mathiason, Biggs,* and *Meadows,* defendant was not placed under arrest nor was defendant's freedom restrained. My review of these cases causes me to conclude that defendant was not in custody when he answered the detective's question as to how long defendant had been at home. From the totality of the circumstances, I do not believe defendant was either under arrest or under its functional equivalent when he answered the detective's question as to how long he had been at home. There was ample evidence to support the trial judge's findings of fact, and those findings support his conclusions.

The first issue the majority addressed was "whether the court erred in allowing the prosecutor to ask certain questions regarding defendant's *post-arrest* silence." (Emphasis added.) The prosecutor's allegedly improper questions ask about defendant's silence, after defendant received *Miranda* warnings, on the subject of what his alleged attacker did. The majority, relying on *Doyle v. Ohio,* 426 U.S. 610, 49 L. Ed. 2d 91 (1966), reasons that because defendant had informed police that he would not answer the questions solely about what had happened to the man who had allegedly attacked him, the prosecutor erred in asking defendant at trial about defendant's silence on subjects other than his alleged attacker. The prosecutor specifically asked if defendant had told anyone about the alleged attack and if defendant had inquired about the alleged attacker's condition. Because I believe the questions were proper, I disagree with the majority's holding.

First, I would observe that, as to defendant's silence prior to his arrest, there is no constitutional violation when a defendant's *pre-arrest* silence is used *for impeachment purposes. Jenkins v. Anderson,* 447 U.S. 231, 65 L. Ed. 2d 86 (1980). Therefore, there was nothing wrong with the prosecutor's questions or defendant's answers about defendant's pre-*Miranda* warning silence on the subject of defendant's alleged attacker.

STATE v. HOYLE

[325 N.C. 232 (1989)]

Second, as to defendant's *post-arrest* silence, a defendant may waive his right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694. The waiver may be made through an express written or oral statement or may be implied by law from the facts and circumstances of the case. *North Carolina v. Butler*, 441 U.S. 369, 60 L. Ed. 2d 286 (1979). In *Butler*, the United States Supreme Court held that the defendant validly waived his rights when, as here, he told police agents that he would talk but refused to sign a waiver form. *See also Connecticut v. Barrett*, 479 U.S. 523, 93 L. Ed. 2d 920 (1987). For a waiver to be valid, defendant must relinquish his rights voluntarily, knowingly, and intelligently; to determine whether defendant has validly waived his rights, the court will look at the totality of the circumstances. *Moran v. Burbine*, 475 U.S. 412, 89 L. Ed. 2d 410 (1986). *See also State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987).

When the police brought defendant to the station for questioning, the police informed him of his *Miranda* rights. He waived his right to remain silent and voluntarily answered all questions except those concerning his alleged attacker. The trial judge found that defendant had waived his rights voluntarily, knowingly, and intelligently. Under the holding in *Butler*, 441 U.S. 369, 60 L. Ed. 2d 286, the fact that defendant refused to sign a waiver form is not relevant. Therefore, to the extent that any of the prosecutor's questions concerned matters to which defendant waived his right to be silent, there was no error. As to those matters, defendant had clearly waived his right to silence.

With regard to the questions concerning the sole matter to which defendant chose to remain silent, that is, what happened when the man followed him to his truck, the prosecutor's questions were also proper. While *Doyle* sets forth the general rule, subsequent cases define *Doyle's* intended application. In *Anderson v. Charles*, 447 U.S. 404, 65 L. Ed. 2d 222 (1980), the United States Supreme Court said that *Doyle*

> does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Id.* at 408, 65 L. Ed. 2d at 226.

**STATE v. HOYLE**

[325 N.C. 232 (1989)]

A *failure to assert* a fact, when it would have been natural to assert it, amounts in effect to an assertion of the non-existence of the fact. This is conceded as a general principle of evidence. There may be explanations, indicating that the person had in truth no belief of that tenor; but the conduct is "prima facie" an inconsistency.

3A Wigmore, *Evidence* § 1042(1) (Chadbourn rev. 1970) (citation omitted).

This Court has recognized that a defendant's silence may amount to an inconsistent statement admissible for impeachment purposes. Defendant's silence will be considered an inconsistent statement "when defendant's silence amounts to a contradiction of his testimony at trial and occurs only when, at the time of defendant's silence, it would have been natural for him to speak and give the substance of his trial testimony." *State v. Odom*, 303 N.C. 163, 166 n.2, 277 S.E.2d 352, 354 n.2, *cert. denied*, 454 U.S. 1052, 70 L. Ed. 2d 587 (1981), *reh'g denied*, 454 U.S. 1165, 71 L. Ed. 2d 322 (1982).

In *State v. McGinnis*, 70 N.C. App. 421, 320 S.E.2d 297 (1984), the defendant testified at trial that the shooting giving rise to his arrest had been accidental. The prosecution then sought to impeach him by asking why he did not tell the police of the alleged accident at the time of his arrest. The Court of Appeals held that the question was proper because "it would clearly have been natural for defendant to have told the arresting police officer that the shooting with which defendant was accused was accidental." *Id.* at 424, 320 S.E.2d at 300. In *State v. Hunt*, 72 N.C. App. 59, 323 S.E.2d 490 (1984), *aff'd by an equally divided Court without precedential value*, 313 N.C. 593, 330 S.E.2d 205 (1985), the Court of Appeals once again applied the rules from *Odom* and concluded that the prosecution could properly use defendant's pretrial silence to impeach defendant's in-court testimony.

In the case now before us, it would have been natural for defendant to have told the detectives that the victim attacked him and that he shot him during the attack. This is particularly true in view of the fact that he so freely discussed all the other facts in the case with the detectives. I conclude that this case presents the situation where a defendant's silence is the equivalent of a prior inconsistent statement and is admissible for impeachment

PEARSON v. NATIONWIDE MUTUAL INS. CO.

[325 N.C. 246 (1989)]

purposes. The prosecutor's questions do not violate *Doyle*, as *Doyle* allows cross-examination by prior inconsistent statements.

In summary, I conclude that defendant was not "in custody" when he answered the detective's question as to how long he had been at home, and therefore that question and defendant's response were properly admitted into evidence. I also conclude that there exists no error with regard to the prosecutor's questions to the detectives and to defendant as to defendant's silence. I vote to affirm the defendant's conviction.