IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-96

No. COA19-967-2

Filed 15 February 2022

Haywood County, No. 18 CRS 315-16

STATE OF NORTH CAROLINA

v.

SHANNA CHEYENNE SHULER

Appeal by defendant from judgment entered 31 October 2018 by Judge William

H. Coward in Haywood County Superior Court. Originally heard in the Court of

Appeals 17 March 2020. *State v. Shuler*, 270 N.C. App. 799, 841 S.E.2d 607 (2020).

Upon remand from the Supreme Court of North Carolina by opinion issued 13 August

2021. *State v. Shuler*, 378 N.C. 337, 2021-NCSC-89.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Brent D. Kiziah, for the State.*
>
> *W. Michael Spivey for defendant-appellant.*

TYSON, Judge.

The Supreme Court of North Carolina held Shanna Cheyenne Shuler

("Defendant") did not forfeit her Fifth Amendment right to silence when she provided

pretrial notice of her intent to offer an affirmative defense. The Supreme Court

remanded the case for this Court to determine whether the erroneously admitted

testimony was harmless beyond a reasonable doubt. We conclude and hold the admission of this evidence was harmless beyond a reasonable doubt.

## I.  Background

¶ 2          The background of the cause is detailed in both the Supreme Court's and this Court's previous opinions. *State v. Shuler*, 378 N.C. 337, 2021-NCSC-89, 861 S.E.2d 512 (2021); *State v. Shuler*, 270 N.C. App. 799, 841 S.E.2d 607 (2020). The allegations underlying Defendant's trafficking in methamphetamine and simple possession of marijuana are unnecessary to determine the issue upon remand.

¶ 3          The salient facts from the Supreme Court's opinion are as follows:

> Defendant was charged with felony trafficking in methamphetamine and with misdemeanor simple possession of marijuana. Prior to trial, defendant filed a notice of her intent to rely upon the affirmative defense of duress pursuant to N.C.G.S. § 15A-905(c)(1). In its entirety, the notice stated the following:
>
>> Now comes the Defendant, by and through her attorney, Joel Schechet and, in accordance with N.C.G.S. § 15A-905(c), gives notice of the following defense:
>>
>> 1. Duress
>
> At trial, Detective Regner testified for the State during its case-in-chief. The State asked Detective Regner if defendant made "any statements" about Joshua Warren when she handed over the substances in her possession. Defense counsel objected, and the trial court overruled the objection. Detective Regner then testified: "No, ma'am. She made no—no comment during that one time."

> Defense counsel asked for the trial court to excuse the jury and then moved for a mistrial arguing that the State's question had "solicited an answer highlighting [defendant's] silence at the scene." The trial court conducted a voir dire to determine the admissibility of Detective Regner's testimony. Ultimately, the trial court allowed the State to ask the question again when the jury returned.
>
> After the State's case-in chief, defense counsel gave its opening statement. Defendant then took the witness stand to testify in her own defense. At the close of all the evidence, the trial court instructed the jury on the defense of duress. Ultimately, the jury found defendant guilty of both charges. Defendant appealed to the Court of Appeals.

*Shuler*, ¶¶ 4-7, 378 N.C. at 338-39, 861 S.E.2d 512, 514-15.

¶ 4        Our Supreme Court recognized Defendant's "silence could not have achieved the purpose of impeaching her credibility as a witness" at the time of the detective's testimony since she had not testified yet. *Id.* ¶ 11, 378 N.C. at 339, 861 S.E.2d at 515. The Court held: "The State cannot preemptively impeach a criminal defendant by anticipating that the defendant will testify because of defendant's constitutional right to decide not to be a witness." *Id.* ¶ 11, 378 N.C. at 340, 861 S.E.2d at 515.  The Court concluded it was error to admit the detective's testimony into evidence. *Id.* ¶ 15, 378 N.C. at 341, 861 S.E.2d at 516.

¶ 5        Because the State did not argue any Fifth Amendment violation was harmless beyond a reasonable doubt before the Supreme Court of North Carolina, that Court

remanded to this Court. In its original brief before this Court, the State posited that if the challenged evidence is substantive evidence of guilt, prohibited by the North Carolina Constitution, the violation and its admission was harmless beyond a reasonable doubt.

## II. Analysis

¶ 6 "A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless." N.C. Gen. Stat. § 15A-1443(b) (2021).

¶ 7 This Court "may consider a number of factors" in making its determination of whether the constitutional error was harmless beyond a reasonable doubt. *State v. Boston*, 191 N.C. App. 637, 652-53, 663 S.E.2d 886, 896-97 (2008). These factors include:

> whether the State's other evidence of guilt was substantial; whether the State emphasized the fact of [the defendant's] silence throughout the trial; whether the State attempted to capitalize on [the defendant's] silence; whether the State commented on [the defendant's] silence during closing argument; whether the reference to [the defendant's] silence was merely benign or *de minimis*; and whether the State solicited the testimony at issue.

*Id.*

¶ 8 In *Boston*, the Court pointed to the State's overwhelming evidence of the

defendant's motive that was established through the testimony of two witnesses. *Id.* at 653, 663 S.E.2d at 897. One of the witnesses also gave a consistent and detailed account of the defendant's involvement in the charged arson. Another witness corroborated the source of the arson, which was consistent with other witness' testimony. *Id.*

¶ 9 The trial transcript showed the testimony relating to the defendant's pre-arrest silence was minimal. The State had not made the defendant's "pre-arrest silence a recurring theme of its case at trial," and had not commented on the defendant's silence during closing argument. *Id.* This Court concluded beyond a reasonable doubt that the jury would have reached the same verdict had the testimony been excluded and held the error was harmless beyond a reasonable doubt. *Id.*

¶ 10 Here, the erroneously admitted evidence of Defendant's silence could have only related to Defendant's affirmative defense of duress. The State contends even when the evidence is considered in the light most favorable to Defendant, she failed as a matter of law to assert or present a proper affirmative duress defense.

¶ 11 The State's evidence tended to show Defendant was the driver and in control of the vehicle. Defendant asserted at trial that she had only sat in the driver's seat. She testified Joshua Warren was the owner of the drugs and he had threatened her in order to convince her to possess and hold onto the drugs.

¶ 12     Defendant testified that as police approached, Warren pulled the bag of methamphetamine from his pants and placed the drugs into her lap before he exited the vehicle. The State's evidence showed once Warren exited the vehicle, he did not return.

¶ 13     The State's evidence tended to show Defendant could have removed the methamphetamine from her body after Warren had exited the vehicle. Both officers investigating the incident testified Defendant showed no signs of duress and that Warren was not present when they approached and communicated with Defendant.

¶ 14     In its closing arguments, the State argued duress was not applicable because duress cannot be invoked by someone who has a reasonable opportunity to avoid the undue exposure to death or serious bodily harm. *See State v. Cheek*, 351 N.C. 48, 61-62, 520 S.E.2d 545, 553 (1999) ("In order to successfully invoke the duress defense, a defendant would have to show that his 'actions were caused by a reasonable fear that he would suffer immediate death or serious bodily injury if he did not so act.'") (citation omitted). Defendant's testimony at trial was the only evidence presented indicating she acted under duress, and it was clearly likely for the jury to have rejected Defendant's affirmative defense.

¶ 15     The State also argues the error was harmless because other evidence of Defendant's guilt of possession of the marijuana and methamphetamine was overwhelming. Defendant testified and admitted she knew what substances the bags

contained when she placed them inside of her bra and admitted to possessing both bags of illegal drugs on her person.

¶ 16       Defendant also acknowledged her purpose of being with Warren was "to get high." Defendant failed to contest the quantity of methamphetamine she possessed. After Defendant's arrest, officers executed a search warrant on the vehicle and obtained a set of digital scales from the vehicle's console, within the driver's reach. Beside the scale was a small handbag labeled, "Shanna Shuler, insane outlaw."

¶ 17       Defendant offered the testimony of Joshua Warren at trial. He denied threatening Defendant and pled the Fifth Amendment when asked if he had tossed the bags of drugs into Defendant's lap. Substantial and overwhelming evidence was presented from which the jury could find beyond a reasonable doubt that Defendant knowingly possessed both the small bag of marijuana and the approximately 40.39 grams of methamphetamine.

¶ 18       The State argues here, as in *Boston*, the sole reference to Defendant's silence regarding her duress occurred during the State's questioning of Detective Regner. No further reference to Defendant's lack of response or silence was made by the State for the remainder of the trial. The State did not cross-exam Defendant regarding her silence after her testimony during which she repeatedly claimed duress or threats from Warren.

¶ 19       Finally, the State argues the prosecutor did not reference her silence during

its closing argument. The State did not attempt to "capitalize on" the challenged evidence and asserts the evidence of Defendant's silence was "*de minimis.*" *Boston*, 191 N.C. App. at 652-53, 663 S.E.2d at 897.

¶ 20        The State also cites *State v. Richardson*, 226 N.C. App. 292, 741 S.E.2d 434 (2013) and *State v. Hoyle*, 325 N.C. 232, 382 S.E.2d 752 (1989) to support the erroneous admission of the detective's testimony in the present case does not rise to the level of the prejudicial error found in both cases. We agree.

¶ 21        In *Richardson*, the prosecutor questioned the defendant about his trial testimony being his first statement, the number of attempts law enforcement had made to interview him and also commented on his post-arrest silence in closing argument. *Richardson*, 226 N.C. App. at 303-08, 741 S.E.2d at 442-45.

¶ 22        Our Supreme Court concluded: "The prosecutor's cross-examination of Defendant impermissibly focused almost exclusively on Defendant's failure, unlike other witnesses, to make a statement to investigating officers. Similarly, the comments made by the prosecutor during his concluding argument to the jury clearly constituted an impermissible comment upon Defendant's decision to exercise his constitutional right to remain silent after being placed under arrest." *Id.* at 308, 741 S.E.2d at 445. The Supreme Court held, "the trial court's failure to preclude the challenged prosecutorial questions and comments rose to the level of plain error despite the fact that the State elicited substantial evidence, taken in isolation, of [the

defendant's] guilt." *Id.* at 310, 741 S.E.2d at 446.

¶ 23 In *Hoyle*, the defendant asserted his actions were in self-defense after a struggle with the victim. *Hoyle*, 325 N.C. at 234, 382 S.E.2d at 753. The prosecutor "repeatedly questioned" detectives and the defendant about whether the defendant had ever told anyone that the victim had attacked him on the night of his murder. *Id.* at 235, 382 S.E.2d at 753. Further, the prosecutor "made reference" to the defendant's silence in his closing argument before the jury. *Id.* at 236, 382 S.E.2d at 754.

¶ 24 Our Supreme Court held the trial court erred by allowing the questions and that the "improper evidence was reinforced by the jury argument." *Id.* at 237, 382 S.E.2d at 754. The Court held:

> In this case there was not an eyewitness to the shooting other than the defendant. His defense depended on the jury's acceptance of his version of the event. The State has not demonstrated beyond a reasonable doubt that it was harmless to attack the credibility of this version by improper evidence[.]

*Id.*

¶ 25 In both cases, the prosecutors repeatedly referenced the challenged evidence and in *Richardson*, referred to it in closing arguments. Here, there was only one reference during the detective's testimony, and the impact on Defendant was minimal. The State has proven the trial court's error to be harmless beyond a

reasonable doubt.

## III.  Conclusion

The State produced overwhelming evidence at trial showing Defendant's guilt. The State did not capitalize on the detective's statement of Defendant's silence and did not reference Defendant's silence in closing argument.  The impact of Detective Regner's reference to Defendant's silence was *de minimis*.  Any erroneously admitted testimony was harmless beyond a reasonable doubt.  *It is so ordered.*

NO ERROR.

Judges ARROWOOD and GORE concur.