STATE OF NORTH CAROLINA v. GARCEL LAVAR CHRISTIAN

No. COA05-1415

(Filed 19 December 2006)

**1. Constitutional Law— testimony about invocation of right to counsel—not prejudicial**

References to a murder defendant's invocation of his right to counsel were erroneously allowed, but the State met its burden of showing that the error was harmless. An officer attempted to videotape the interview with defendant, but the tape did not record the entire interview and it became necessary to explain the chronology of events after the tape stopped. References were made to defendant's invocation of rights only in this context and the State did not attempt to capitalize on defendant's invocation of his rights. Additionally, the State presented other evidence of guilt.

**2. Appeal and Error— assignments of error—not matched in brief**

An assignment of error concerning the testimony of a particular detective was deemed abandoned where the brief concerned different evidence rules than those cited in the assignment of error, and the only mention of this particular detective's testimony in the brief was in a footnote.

**3. Evidence— prior crimes—bad acts—admission not prejudicial**

The trial court did not err in a murder prosecution by admitting evidence of a murder defendant's prior bad acts where he

STATE v. CHRISTIAN

[180 N.C. App. 621 (2006)]

had assaulted, shot at, and threatened a man named Massey, his family, and whoever was with him, and the victim was riding in a car with friends of Massey. The evidence was relevant to show defendant's intent, the two month interval between the earliest incident and the shooting did not make the incidents too remote in time, and the probative value of the evidence was not substantially outweighed by the prejudice.

Appeal by defendant from judgments entered 9 March 2005 by Judge W. Erwin Spainhour in Cabarrus County Superior Court. Heard in the Court of Appeals 17 October 2006.

*Attorney General Roy Cooper, by Assistant Attorney General Daniel P. O'Brien, for the State.*

*Richard B. Glazier for defendant appellant.*

McCULLOUGH, Judge.

Garcel Lavar Christian ("defendant") appeals from a jury verdict of guilty of first-degree murder, discharging a weapon into occupied property, and possession of a firearm by a felon.

## FACTS

On 5 April 2004, defendant was indicted by a grand jury in Cabarrus County for murder and discharging a firearm into occupied property. On 13 September 2004, he was indicted for possession of a firearm by a felon. On 31 January 2005, the grand jury returned superseding indictments charging him with murder, discharging a firearm into occupied property, and possession of a firearm by a felon. He pled not guilty and was tried before a jury at the 18 February 2005 Criminal Session of Cabarrus County Superior Court before the Honorable W. Erwin Spainhour. On 9 March 2005, the jury found him guilty of all three charges. Defendant appeals.

The State's evidence tended to show the following: On 17 March 2004, D.J. Kirks ("Kirks") and Jamie Lilly ("Lilly") wanted to get some marijuana and go to a friend's house. They took Kirks' aunt, Rosemary Kirks ("Rosemary") to ride with them, telling her they were going to stop off on the way to get a music C.D. from someone. Kirks drove the car, Rosemary rode in the front passenger seat, and Lilly rode in the backseat behind Kirks. They drove to a local neighborhood where they could buy the drugs. Kirks dropped Lilly off, and waited for him to return.

Lilly walked a couple of blocks, saw a group of people including defendant, went to get the drugs, and made his way back. Lilly got back in the car and they started to leave. Then, Kirks saw some people, including defendant, step out and come toward them. Kirks saw defendant had a gun pointed at his face from 2-3 feet away. Both Kirks and Lilly saw defendant begin shooting at the car. They both knew who defendant was, since their friend Brandon Massey ("Massey") had pointed defendant out to them as they were driving down the street one day.

Defendant fired several times at the vehicle. One bullet went through one of the windows of the vehicle, through the back of the front seat, and into the upper left back of Rosemary. It went into her chest, perforating the pericardial sac and damaging her left lung, heart, and a major artery, causing her death. Rosemary did not die or even lose consciousness right away, and Kirks and Lilly did not know that she had been shot, but instead thought she was having a panic attack or heart attack. The boys drove straight to the hospital. When medical personnel took her out of the car, they noticed all the blood on the seat and on her back. Rosemary went into cardiac arrest and died.

Kirks and Lilly were horrified, believing that they had essentially caused Rosemary to be killed just because they wanted to obtain some marijuana. Their friend Massey had pointed defendant out to them and warned them that defendant had robbed him. Defendant told Massey he would kill him or any of his family or any people that he hung out with. Lilly hung out with Massey every day during the time preceding the shooting.

At the hospital, Kirks at first gave police a false story about being shot at by someone they did not know at a stop sign on Vee Street. But when officers found no evidence of a crime on Vee Street and asked the boys to help solve the crime, both boys independently, in separate cars, took them to the actual scene of the shooting. They also gave them defendant's name as the shooter, and picked defendant out of photographic lineups.

Defendant was arrested on 18 March 2004. He was read his *Miranda* rights, and voluntarily waived them and agreed to give a statement. He was asked where he was about 9:00 p.m. the previous night, and he stated that he had gotten home at about 5:30 p.m. and stayed there. He was asked if he owned any guns, and he replied he

did not. Shortly after that, he indicated that he did want a lawyer and the interview ended.

I.

[1] Defendant contends the trial court erred by admitting references to defendant's invoking his right to remain silent. We disagree.

"[A] defendant's exercise of his constitutionally protected rights to remain silent and to request counsel during interrogation may not be used against him at trial." *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502 (1994). Furthermore, allowing testimony regarding a defendant's invocation of counsel has been found to be error. *State v. Ladd*, 308 N.C. 272, 284, 302 S.E.2d 164, 172 (1983). This error warrants a new trial unless the State can show the error to be harmless beyond a reasonable doubt. N.C. Gen. Stat. § 15A-1443(b) (2005). "To find harmless error beyond a reasonable doubt, we must be convinced that there is no reasonable possibility that the admission of this evidence might have contributed to the conviction." *Ladd*, 308 N.C. at 284, 302 S.E.2d at 172.

In undertaking the above analysis in the context of testimony regarding a defendant's invocation of rights, we have considered the following factors: (1) whether the State presented other overwhelming evidence of guilt of the defendant; (2) whether the testimony was elicited by the State or volunteered by a witness; (3) whether the State emphasized the defendant's invocation of rights; and (4) whether the State attempted to capitalize on the defendant's invocation of rights through reference in its closing statement or during cross-examination. *State v. Rashidi*, 172 N.C. App. 628, 639-40, 617 S.E.2d 68, 76-77, *aff'd per curiam*, 360 N.C. 166, 622 S.E.2d 493 (2005). Further, this Court has held that questioning which references a defendant's invocation of rights but serves "merely to explain the chronology of the investigation" does not warrant a new trial. *State v. Holsclaw*, 42 N.C. App. 696, 702, 257 S.E.2d 650, 654, *disc. review denied*, 298 N.C. 571, 261 S.E.2d 126 (1979).

In the present case, we find that permitting the prosecutor and the officer to reference defendant's invocation of his right to counsel was error, but that the State has met its burden to show that the error was harmless beyond a reasonable doubt. The officer attempted to videotape the entire waiver of rights and interview with defendant, but the tape cut off and did not record the entire interview. At a minimum, the portion of the interview involving whether defendant had

ever owned a gun was not included on the video. Since the jury had seen the tape, which did not include the complete interview, it became necessary to explain the chronology of events that took place after the tape cut off. Through the line of questioning, the State illustrated that defendant's statement regarding whether he had ever owned a gun was made prior to invoking his rights. The references made at trial to defendant's invocation of rights occurred only in this context. Additionally, the State presented two eyewitnesses who were within three or four feet of the shooter who identified defendant as the shooter. Also, two other witnesses stated that defendant was near the scene of the crime. Further, the State did not attempt to capitalize on defendant's invocation of rights, but explained to the jury the chronology of defendant's initial interview with the police. *Doyle v. Ohio*, 426 U.S. 619, 49 L. Ed. 2d 91 (1976) (stating "that the use for *impeachment* purposes of petitioners' silence, at the time of arrest and after receiving Miranda warnings, violated the Due Process Clause of the Fourteenth Amendment"). Accordingly, defendant is not entitled to a new trial on this basis.

## II.

**[2]** Defendant contends the trial court erred by admitting evidence of defendant's prior bad acts. We disagree.

At the outset, defendant makes four assignments of error which he lists in his brief as corresponding to this contention. Assignment of error 17 is related to defendant's argument under Part "I" above, and thus, has already been discussed. Assignment of error 14 contests the testimony of Detective John Tierney based on hearsay grounds and Rules of Evidence 801-804, as well as on constitutional and due process grounds. However, the argument in defendant's brief concerns Rules of Evidence 404(b) and 403. Also, the only discussion in defendant's brief specifically referring to Detective John Tierney's testimony was contained in a footnote at the end of the argument which states, "[o]bviously if the Massey testimony should have been precluded, th[e]n clearly the Tierney testimony would be rendered irrelevant and incompetent." Therefore, assignment of error 14 is deemed abandoned. N.C. R. App. P. 28(b)(6).

**[3]** The testimony at issue was provided by Massey, a friend of Kirks and Lilly. The following is a summary of the contested testimony: On 24 January 2004, Massey was riding in a car when defendant opened the door and pointed a .357 revolver in the car and demanded everything he had. Massey gave him $500, but defendant told Massey to

give· him everything else or defendant would shoot Massey. Then, defendant pulled Massey out of his car, put the gun to Massey's head, and demanded Massey's gold teeth. Massey handed defendant the gold teeth. When a transportation bus pulled up behind defendant and Massey, defendant walked away. Massey's friend had been punched by one of defendant's friends, so Massey took him to the hospital. There they reported to police that they had been the victims of a robbery, and Massey picked defendant out of a lineup for the police officers.

In February 2004, Massey was in the front passenger seat of a car being driven by some friends when they saw defendant and another person walking up behind them. Defendant was about 20 or 30 feet away when they saw defendant start shooting with what Massey recognized as a handgun. Defendant shot the gun approximately 8 or 10 times.

In the months of February and March 2004, defendant called Massey on his cell phone, threatening to kill him, his family, and whoever was with him. Defendant left such messages for Massey two to three times per week.

Defendant contends that this testimony violates North Carolina Rule of Evidence 404(b). Defendant also contends the same testimony violates North Carolina Rule of Evidence 403. We disagree.

Rule 404(b) of the North Carolina Rules of Evidence provides that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). Generally, this rule is one of *inclusion* of relevant evidence, so long as its probative value serves more than to show an individual's criminal propensity or disposition. *State v. Summers*, 177 N.C. App. 691, 695-96, 629 S.E.2d 902, 906 (2006), *appeal dismissed, disc. review denied*, 360 N.C. 653, —— S.E.2d —— (2006). We review a trial court's determination to admit evidence under Rule 404(b) for an abuse of discretion. *Id.* at 696-97, 629 S.E.2d at 907. "An abuse of discretion occurs when a trial judge's ruling is 'manifestly unsupported by reason.' " *Id.*

In the instant case, the trial court ruled that Massey's testimony was admissible to show identity, *modus operandi*, and intent. The evidence was relevant to show defendant's intent because the State contended defendant shot at the car either intending to shoot Massey's friends, or believing Massey to be the passenger. Our Supreme Court has held

> [e]vidence of defendant's acts of violence against [the witness], even though not part of the crimes charged, was admissible since it " 'pertain[ed] to the chain of events explaining the context, motive and set-up of the crime' " and " 'form[ed] an integral and natural part of an account of the crime . . . necessary to complete the story of the crime for the jury.' "

*State v. White*, 349 N.C. 535, 552, 508 S.E.2d 253, 264 (1998) (citations omitted), *cert. denied*, 527 U.S. 1026, 144 L. Ed. 2d 779 (1999).

Further, we disagree with defendant's contention that the incidents were too remote in time to be properly admitted. "[R]emoteness in time generally affects only the weight to be given such evidence, not its admissibility." *State v. Stager*, 329 N.C. 278, 307, 406 S.E.2d 876, 893 (1991) (holding "the death of the defendant's first husband ten years before the death of her second was not so remote as to have lost its probative value"). In the present case, only two months elapsed between the earliest incident Massey referred to in his testimony and the shooting. Accordingly, the trial court did not abuse its discretion admitting testimony concerning each of the incidents.

Rule 403 of the North Carolina Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *Maglione v. Aegis Family Health Ctrs.*, 168 N.C. App. 49, 59, 607 S.E.2d 286, 293 (2005). The admission or exclusion of evidence under Rule 403 "is within the sound discretion of the trial court, and the trial court's ruling should not be overturned on appeal unless the ruling was 'manifestly unsupported by reason or [was] so arbitrary that it could not have been the result of a reasoned decision.' " *State v. Hyde*, 352 N.C. 37, 55, 530 S.E.2d 281, 293 (2000) (citation omitted), *cert. denied*, 531 U.S. 1114, 148 L. Ed. 2d 775 (2001), *cert. denied*, 360 N.C. 72, 623 S.E.2d 779 (2005). We determine the probative value of the contested evidence is not substantially out-

IN RE R.R.

[180 N.C. App. 628 (2006)]

weighed by the danger of unfair prejudice, and therefore, we disagree with defendant's contention.

Accordingly, we find no prejudicial error by the trial court. Also, any assignments of error that were not argued in defendant's brief are deemed abandoned. N.C. R. App. P. 28(b)(6).

No prejudicial error.

Judges WYNN and McGEE concur.