STATE OF NORTH CAROLINA v. SCOTT ROBERT ERICKSON

No. COA06-173

(Filed 6 February 2007)

## 1. Homicide— first-degree murder—failure to instruct on second-degree murder

The trial court did not commit plain error in a first-degree murder case by failing to give an instruction ex meru motu on second-degree murder based on alleged evidence that defendant did not have the ability to form the requisite intent to commit first-degree murder, because the State established each element of first-degree murder including evidence that: (1) during the summer of 2002, the victim expressed to several people that she was afraid defendant would harm her based on the fact she cut down his marijuana plants and removed some of his belongings; (2) defendant believed he was being told to shoot the victim and that messages from television and radio programs were telling him to return to North Carolina and kill the victim; (3) defendant returned to North Carolina, went to the victim's house, and shot her without any provocation; and (4) although a psychologist's testimony tended to establish defendant was unable to understand whether his actions were right or wrong, he did not testify that defendant was unable to plan his actions or that he lacked the ability to premeditate and deliberate.

## 2. Constitutional Law— right to counsel—offhand remark

The trial court did not abuse its discretion in a first-degree murder and possession of a weapon of mass destruction case by failing to grant a mistrial when the State's witness allegedly commented on defendant's invocation of his constitutional right to counsel, because: (1) the prosecutor did not elicit testimony from the agent witness regarding defendant's request to invoke his right to remain silent, but instead the agent's comment was made

in response to defense counsel's question; (2) the prosecutor did not argue to the jury that an inference could be made regarding defendant's request for an attorney that would reflect on defendant's mental state at the time of the murder; (3) the agent's comment, taken in context, was not of such character that the jury would have concluded it was a comment on defendant's exercise of his right to counsel; (4) the agent's statement taken in context was not made to shed doubt on defendant's insanity defense, but was an attempt to explain why the agent was unable to determine when defendant's luggage was packed; (5) assuming arguendo the agent's comment was improper, the jury poll conducted by the trial court after the curative instruction was given indicated the members of the jury understood the instruction to disregard the comment and that they would in fact disregard the comment; and (6) the State presented overwhelming evidence of defendant's guilt.

**3. Evidence— hearsay—state of mind exception**

The trial court did not abuse its discretion in a first-degree murder case by admitting testimony regarding the victim's state of mind, because: (1) the fact that the last statements the victim made regarding her fear of defendant happened some time prior to the murder does not deprive the evidence of its probative value; (2) although defendant presented an insanity defense, the defense is unrelated to the existence or nonexistence of the elements of the criminal act, and thus, the State was required to prove each element of first-degree murder; and (3) the conversations between the victim and the witnesses related directly to the victim's fear of defendant and were admissible to show the victim's then existing state of mind at the time she made the statements.

**4. Appeal and Error— preservation of issues—failure to argue**

The remaining assignments of error that defendant failed to present in his brief are deemed abandoned under N.C. R. App. P. 28(b)(6).

Appeal by defendant from judgment entered 23 September 2004 by Judge William Z. Wood, Jr. in Wilkes County Superior Court. Heard in the Court of Appeals 30 October 2006.

*Attorney General Roy Cooper, by Special Deputy Attorney General Neil Dalton, for the State.*

*Winston & Maher, by Thomas K. Maher, for defendant-appellant.*

CALABRIA, Judge.

Scott Robert Erickson ("defendant") appeals from judgment entered upon jury verdicts finding him guilty of first-degree murder and possession of a weapon of mass destruction. We find no error.

The State presented the following evidence: defendant, a Minnesota native, moved to North Carolina to live with his father, Scott Schneiderhan ("Mr. Schneiderhan") who lived in a trailer owned by Ms. Allene Pierce ("Ms. Pierce"), the victim. The trailer was located on Ms. Pierce's farm near her residence. Ms. Pierce allowed Mr. Schneiderhan and the defendant to live in the trailer rent-free in exchange for their help on the farm. During the spring of 2002, Ms. Pierce began having problems with Mr. Schneiderhan and defendant. Ms. Pierce discussed these problems with several people including her brother, sisters, and neighbors. Over the course of several conversations, Ms. Pierce told her friends that Mr. Schneiderhan and defendant were not completing their work as agreed and that she wanted them to leave. Ms. Pierce, however, indicated that she had not asked Mr. Schneiderhan and defendant to leave because she was afraid that defendant may harm her or her property. During the spring of 2002, Mr. Schneiderhan moved but the defendant continued to live in Ms. Pierce's trailer without working on Ms. Pierce's farm. During the summer of 2002, defendant also left Ms. Pierce's trailer and returned to Minnesota.

On 13 December 2002, at approximately 9:30 a.m., the Wilkes County Sheriff's Department received a 911 phone call from Ms. Pierce's residence. Law enforcement and emergency personnel were dispatched to Ms. Pierce's residence where they found Ms. Pierce lying face down on the floor of her kitchen. Later, it was determined that Ms. Pierce had been shot in the chest and that she died from the loss of blood. At approximately 10:30 a.m., on the same day, defendant arrived at the home of Ray Absher ("Mr. Absher") and knocked on the front door. When Mr. Absher opened the door, defendant asked for a pack of cigarettes. Mr. Absher testified that the defendant did not appear to be nervous and was not acting abnormally. After Mr. Absher gave defendant a pack of cigarettes, defendant left. As the

defendant was driving away, his car became stuck at the end of Mr. Absher's driveway. The defendant got out of his car, went back to Mr. Absher's house and asked Mr. Absher if he could leave "something" there. Mr. Absher testified that defendant had often left personal belongings at his home and he gave defendant permission to leave the item. The defendant walked back to his car and retrieved an object wrapped in a towel. Mr. Absher told defendant to take the object and place it in the back room of the basement. After the defendant placed the item in the basement, Mr. Absher drove the defendant to Robert Jones' ("Mr. Jones") home, where the defendant was staying.

That evening, police officers arrived at Mr. Absher's home and questioned him about the defendant's whereabouts, the defendant's car and whether Mr. Absher had seen the defendant with a gun. Mr. Absher responded to the officers' questions but indicated that he had not seen the defendant with a gun. After the officers left, Mr. Absher's wife reminded him that the defendant had stored an object in the basement earlier that morning. Mr. Absher retrieved the object and discovered that it was a gun. Mr. Absher immediately contacted the police. Defendant was arrested that evening at Mr. Jones' home.

Defendant was indicted for first-degree murder and possession of a weapon of mass destruction. On 9 July 2003, defendant served the State with notice of his intent to raise the defense of insanity and to introduce expert testimony on mental health issues. After two competency evaluations, defendant was discharged to the custody of the Wilkes County Sheriff's Department on 17 February 2004 as being capable to stand trial.

At trial, defendant presented the testimony of Dr. Karla de Beck ("Dr. de Beck"), a forensic psychiatrist at Dorothea Dix Hospital ("Dorothea Dix") in Raleigh, North Carolina. Pursuant to a court order, Dr. de Beck determined that defendant had schizophrenia, paranoid type, depressive disorder and a history of cannabis, cocaine and alcohol abuse. Dr. de Beck testified that, in her opinion, defendant experienced active symptoms of psychosis consistent with paranoid schizophrenia at the time of the alleged incident.

Defendant also presented the testimonies of Dr. Cindy Cottle ("Dr. Cottle") and Dr. Mark Hazelrigg ("Dr. Hazelrigg"), forensic psychologists at Dorothea Dix Hospital. Dr. Cottle and Dr. Hazelrigg examined defendant to determine whether defendant's symptoms of psychosis were malingered. Both doctors determined within a rea-

sonable degree of psychological certainty that the defendant's symptoms of psychosis were not malingered.

Finally, defendant presented the testimony of Dr. Moira Artigues, a psychiatrist in private practice, who determined defendant was not responsible for his actions due to the severity of his schizophrenia. Defendant also presented the testimony of Dr. John Frank Warren, III ("Dr. Warren"), a licensed psychologist, who concluded that defendant's illness so impaired him at the time of the murder that he was unable to know right from wrong.

On 23 September 2004, a jury found defendant guilty of both first-degree murder and possession of a weapon of mass destruction. Wilkes County Superior Court Judge William Z. Wood, Jr. entered judgment upon jury verdicts and sentenced defendant to life imprisonment without parole in the North Carolina Department of Correction. Defendant appeals.

There was no question that defendant fired the shot that killed Ms. Pierce. The issue in this case was whether defendant was legally insane and whether he killed the victim after forming the specific intent to kill.

**[1]** Defendant begins by arguing that an instruction on second-degree murder should have been given, despite his failure to request it, because there was evidence that defendant did not have the ability to form the requisite intent to commit first-degree murder. Because defendant did not request an instruction on second-degree murder, we review for plain error.

"[I]n exceptional cases, where the claimed instructional error is fundamental, or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty, absence of the required instruction, even when there is no objection, will justify reversal under the plain error rule." *State v. Connell*, 127 N.C. App. 685, 691, 493 S.E.2d 292, 296 (1997) (internal quotations and citations omitted). "In order to show the existence of plain error in the trial court's charge, the defendant must establish that but for the erroneous charge the jury probably would have reached a different verdict." *Id.* "The test for determining whether the jury must be instructed on second-degree murder is whether there is any evidence in the record which would support a verdict of second-degree murder." *State v. Conaway*, 339 N.C. 487, 514, 453 S.E.2d 824, 841 (1995). "It is unquestioned that the trial judge must instruct the

jury as to a lesser-included offense of the crime charged, when there is evidence from which the jury could find that the defendant committed the lesser offense." *Id.* However, "[i]f the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first-degree, including premeditation and deliberation, and there is *no* evidence to negate these elements . . . the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder." *State v. Millsaps*, 356 N.C. 556, 560, 572 S.E.2d 767, 771 (2002) (internal quotations omitted) (emphasis in original). "Only where defendant has brought forth evidence to negate the element of premeditation and deliberation, or where the evidence is equivocal as to premeditation and deliberation, is defendant entitled to an instruction on second-degree murder." *State v. Ingle*, 336 N.C. 617, 628, 445 S.E.2d 880, 885 (1994).

"First degree murder is defined as the intentional and unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Hornsby*, 152 N.C. App. 358, 364, 567 S.E.2d 449, 454 (2002) (internal quotations omitted). "Murder in the second degree, on the other hand, is the unlawful killing of a human being with malice but without premeditation and deliberation." *Id.* (internal quotations omitted). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Bullock*, 326 N.C. 253, 257, 388 S.E.2d 81, 83 (1990). "Deliberation means an intention to kill executed by one in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose . . . ." *State v. Ruof*, 296 N.C. 623, 636, 252 S.E.2d 720, 728 (1979).

The evidence in the present case tended to show that during the summer of 2002, Ms. Pierce expressed to several people that she was afraid defendant would harm her. Also, defendant was upset with Ms. Pierce because she had taken his belongings and cut down his marijuana plants. Defendant believed he was being told to shoot Ms. Pierce and that messages from television and radio programs were telling him to return to North Carolina and kill Ms. Pierce. When defendant returned to North Carolina, he went to Ms. Pierce's house and shot her. Further, there was no evidence that Ms. Pierce provoked defendant. The State's evidence clearly established each element of first-degree murder and there was no evidence to negate these elements. Accordingly, the trial court did not commit plain

error by not submitting an instruction on second-degree murder to the jury. *See Hornsby*, 152 N.C. App. at 365, 567 S.E.2d at 455 (holding an instruction on second-degree murder was not warranted when each element of first-degree murder was clearly established and the defendant's insanity defense did not negate any element).

Defendant contends that the testimony of Dr. Warren regarding defendant's mental state at the time of the crime negated the elements of premeditation and deliberation thereby requiring an instruction on second-degree murder and the failure to give such instruction was plain error. We disagree.

A careful review of the transcript reveals that Dr. Warren's testimony tended to establish defendant was unable to understand whether his actions were right or wrong. Dr. Warren testified that defendant was diagnosed with paranoid schizophrenia and that defendant's symptoms included a delusional system which affected defendant's cognitive abilities. Dr. Warren also testified that because of defendant's delusional system, he did not know the natural consequences of shooting Ms. Pierce—i.e. that Ms. Pierce would actually die. Dr. Warren testified that in defendant's delusional state, he did not understand that Ms. Pierce would in fact actually die, but because Ms. Pierce was "watching him on TV" and knew he was coming to kill her, that she would "not really be dead." Dr. Warren did not testify that defendant was unable to plan his actions or that he lacked the ability to premeditate and deliberate.

Dr. Warren's testimony established defendant's mental state at the time of the crime—that defendant was incapable of understanding whether his actions were right or wrong. However, Dr. Warren's testimony did not negate defendant's ability to premeditate and deliberate. *See Ingle*, 336 N.C. at 629, 445 S.E.2d at 886 ("The ability to distinguish between right and wrong and the ability to premeditate and deliberate are entirely different considerations."); *see also, State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988) (distinguishing between evidence presented to support an insanity defense and evidence to negate premeditation and deliberation).

In *Ingle*, our Supreme Court upheld the trial court's denial of the defendant's request for an instruction on second-degree murder. The defendant claimed the instruction was supported by expert testimony regarding his mental state at the time of the alleged crime. *Id.*, 336 N.C. at 629-30, 445 S.E.2d at 886. Justice Meyer, writing for the Court reasoned:

Testimony that defendant lacked the ability to engage in the *higher* function of determining the moral acceptability of his actions, even if believed, does not negate or call into question his ability to plan his actions. Accordingly, such evidence does not justify the submission of an instruction on second-degree murder.

*Id.* (emphasis in original). As in *Ingle,* Dr. Warren's testimony, did not negate or call into question defendant's ability to plan his actions but· tended to establish that defendant lacked the ability to know right from wrong. Because defendant did not present evidence that he was unable to premeditate or deliberate, an instruction on second-degree murder was not required. Accordingly, the trial court did not commit plain error and this assignment of error is overruled. *See State v. Adams,* 335 N.C. 401, 439 S.E.2d 760 (1994).

**[2]** Defendant next argues the trial court erred by not granting a mistrial when the State's witness, Agent Chris Laws ("Agent Laws"), commented on defendant's invocation of his constitutional right to counsel and the trial court compounded the problem by giving a curative instruction to the jury. We disagree.

"A trial court should grant a defendant's motion for mistrial only when there are improprieties in the trial so fundamental that they substantially and irreparably prejudice the defendant's case, making it impossible for the defendant to receive a fair and impartial verdict." *State v. Diehl,* 147 N.C. App. 646, 650, 557 S.E.2d 152, 155 (2001). "[T]he decision of whether to grant a mistrial rests in the sound discretion of the trial judge and will not be disturbed on appeal absent a showing of an abuse of discretion." *State v. Upchurch,* 332 N.C. 439, 453, 421 S.E.2d 577, 585 (1992) (internal quotations omitted). "[A] trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Barts,* 316 N.C. 666, 682, 343 S.E.2d 828, 839 (1986).

During cross-examination, the following exchange took place between the defense attorney, Maitri Klinkosum ("Mr. Klinkosum"), and Agent Laws:

[Mr. Klinkosum]: In regards to his luggage, you never determined whether he simply just didn't unpack or whether they had been packed up, correct, while he was here in North Carolina?

[Agent Laws]: He asked for an attorney. I couldn't ask him that.

Defendant argues Agent Laws' response regarding defendant's invocation of his constitutional right to counsel tainted the jury's ability to fairly assess whether defendant was mentally insane at the time of the crime. Defendant relies upon *Wainwright v. Greenfield*, 474 U.S. 284 (1986), in which the United States Supreme Court held that a defendant's invocation of his right to remain silent could not be used by the state as proof of defendant's sanity. Defendant also relies upon *State v. Hoyle*, 325 N.C. 232, 382 S.E.2d 752 (1989), in which our Supreme Court held it improper for the State to comment on a defendant's silence and *State v. Shores*, 155 N.C. App. 342, 573 S.E.2d 237 (2002), in which this Court held the prosecutor's arguments and comments to the jury violated defendant's right to remain silent.

We find the decisions of *Wainwright, Hoyle,* and *Shores* distinguishable from the facts of this case. In each of the above cases, the prosecutor either elicited testimony regarding the defendant's invocation of his constitutional rights or argued to the jury that the defendant invoked his right to remain silent. In the case before us, the prosecutor did not elicit testimony from Agent Laws regarding defendant's request. Rather, Agent Laws' comment was made in response to the defense attorney's question. Further the prosecutor did not argue to the jury that an inference could be made regarding defendant's request for an attorney that would reflect on defendant's mental state at the time of the murder.

The facts of this case are similar to those of *State v. Hamilton*, 53 N.C. App. 740, 281 S.E.2d 680 (1981). In *Hamilton*, the State's witness responded to a question regarding how he determined the defendant was using an alias. *Id.* at 742, 281 S.E.2d at 682. While answering the question, the witnesses stated that the defendant said he did not want to talk. *Id.* We adopted the test set out in *Knowles v. United States*, 224 F.2d 168, 170 (10th Cir. 1955), which requires us to consider whether "the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment" on defendant's exercise of his right to silence. *Hamilton*, 53 N.C. App. at 744, 281 S.E.2d at 683. In so doing, we concluded that the witness' statement, taken in context, was not intended to be a comment on the defendant's invocation of his right to silence. *Id.*

Applying the test adopted in *Hamilton* to the case before us, we do not find that Agent Laws' comment, taken in context, was of such character that the jury would have concluded it was a comment on defendant's exercise of his right to counsel. As in *Hamilton*, "a jury

would likely treat [the comment] as nothing more than an insignificant remark of little consequence." *Id.*, 53 N.C. App. at 744, 281 S.E.2d at 683.

Defendant argues that *Hamilton* is distinguishable from the present case because *Hamilton* did not involve an insanity defense. Defendant also argues that informing the jury that defendant requested an attorney when he was arrested bears directly upon the plausibility of his insanity defense. Defendant's argument is not without merit. However, taking Agent Laws' statement in context, its purpose was not to shed doubt on defendant's insanity defense but was an attempt to explain why he was unable to determine when defendant's luggage was packed. Again, taken in context, it is doubtful that the jury would have considered Agent Laws' statement to be more than an offhand remark with little implication regarding defendant's mental state at the time of the crime.

Assuming, *arguendo*, Agent Laws' comment was improper, defendant further contends that the trial court's curative instruction, given over objection, only acted to compound the effects of the comment. We disagree.

"Generally, when a trial court properly instructs jurors to disregard incompetent or objectionable evidence, any error in the admission of the evidence is cured." *Diehl*, 147 N.C. App. at 650, 557 S.E.2d at 155. "[I]n deciding whether the instruction did in fact cure any error, the crucial inquiry is into the nature of the evidence and its probable influence upon the mind of the jury in reaching a verdict as well as the probable difficulty in erasing it from the mind." *State v. Griffin*, 136 N.C. App. 531, 547-48, 525 S.E.2d 793, 805 (2000) (internal quotations omitted). Additionally, an objectionable comment may be rendered harmless beyond a reasonable doubt "[i]f the State shows overwhelming evidence of the defendant's guilt . . . ." *State v. Riley*, 128 N.C. App. 265, 270, 495 S.E.2d 181, 185 (1998).

As already stated, given the context of Agent Laws' comment, the jury probably treated Agent Laws' comment as nothing more than an offhand remark. Also, the jury poll conducted by the trial court after the curative instruction was given indicated that the members of the jury understood the instruction to disregard Agent Laws' comment and would in fact disregard the comment. Finally, the State presented overwhelming evidence of defendant's guilt.

[3] Defendant's final argument is that the trial court erred by admitting testimony regarding Ms. Pierce's state of mind because it

was irrelevant and highly prejudicial. During the guilt-innocence phase of the trial, the State presented the testimonies of Bernice Mathis, Dale Pierce, Betty Roberts, and Sydney Johnson concerning statements made by Ms. Pierce to them regarding her fear of defendant. Defendant contends that these statements were inadmissible under North Carolina Rules of Evidence Rule 803(3) because they were not statements of Ms. Pierce's mind as of the date of her death. We disagree.

Rule 803 of the North Carolina Rules of Evidence allows "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health)" to be admitted into evidence. N.C. Gen. Stat. § 8C-1, Rule 803 (2005).

Bernice Mathis ("Ms. Mathis"), Ms. Pierce's friend, testified that during the summer of 2002, Ms. Pierce said that she was afraid of defendant. Ms. Pierce told Ms. Mathis that she heard shots being fired at the trailer and that she was afraid defendant would burn her out of her home. Dale Pierce ("Mr. Pierce") testified that he had known Ms. Pierce and had conducted business with her for twenty-five years. Mr. Pierce testified that on one occasion approximately four months prior to defendant shooting Ms. Pierce, Ms. Pierce told him that she was afraid of defendant. Ms. Pierce told Mr. Pierce that defendant had "shot her trailer up." After Mr. Pierce promised Ms. Pierce that he would not tell anyone, she stated, "I'm scared to run him off or call a deputy. He'll come back and kill me."

Betty Roberts ("Ms. Roberts"), Ms. Pierce's friend, also testified that during the summer of 2002 Ms. Pierce told her that she was afraid of defendant and that she was afraid he would kill her cows or "burn her out." Sidney Johnson ("Mr. Johnson"), Ms. Pierce's nephew, testified that he visited his aunt once or twice per week and that on each occasion she told him that she was afraid of defendant. During the period of time after defendant moved from of Ms. Pierce's trailer, Ms. Pierce told Mr. Johnson on several occasions that she was afraid defendant would come back and harm her.

"Evidence tending to show state of mind is admissible as long as the declarant's state of mind is a relevant issue and the possible prejudicial effect of the evidence does not outweigh its probative value." *State v. McHone*, 334 N.C. 627, 435 S.E.2d 296 (1993) (statements regarding defendant's threats to victim made six months prior to murder admissible); *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66

(1990) (statements regarding victim's state of mind three weeks before her disappearance were relevant to the issue of her relationship with her husband). The witnesses' testimonies related directly to Ms. Pierce's fear of defendant and were admissible to show her then existing state of mind at the time she made the statements. *See McHone*, 334 N.C. at 637, 435 S.E.2d at 302.

Defendant further contends that the prejudicial effect of Ms. Pierce's statements outweighed any probative value because the statements were made long before the date she was murdered and the most recent statements were made during the summer of 2002.

"Whether or not to exclude evidence under Rule 403 of the Rules of Evidence is a matter within the sound discretion of the trial court and its decision will not be disturbed on appeal absent a showing of an abuse of discretion." *State v. McCray*, 342 N.C. 123, 131, 463 S.E.2d 176, 181 (1995). "Abuse of discretion occurs where the court's ruling is manifestly unsupported by reason or is so arbitrary it could not have been the result of a reasoned decision." *State v. Syriani*, 333 N.C. 350, 379, 428 S.E.2d 118, 133 (1993).

"Notwithstanding its relevancy, evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *McHone*, 334 N.C. at 638, 435 S.E.2d at 302 (citations and quotations omitted); N.C. Gen. Stat. § 8C-1, Rule 403 (2005). "Unfair prejudice has been defined as an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *State v. Mason*, 315 N.C. 724, 731, 340 S.E.2d 430, 435 (1986) (internal quotations omitted).

In the case before us, Ms. Pierce told several witnesses on numerous occasions that she was afraid to ask defendant to leave because she was afraid that he may harm her. Also, Mr. Johnson testified that after defendant moved to Minnesota, Ms. Pierce continued to tell him that she was afraid defendant would return to North Carolina and harm her. The evidence tended to show that Ms. Pierce was afraid of defendant and that fear caused her to allow defendant to continue to live in her trailer even after defendant stopped working on her farm. The fact that the last statements Ms. Pierce made regarding her fear of defendant happened some time prior to the murder does not deprive the evidence of its probative value. *See McHone*, 334 N.C. at 637-38, 435 S.E.2d at 302.

Defendant also contends that because an insanity defense was presented, the only relevant evidence that should have been admitted

was evidence that would rebut the insanity defense and that the testimony of the witnesses regarding Ms. Pierce's state of mind was irrelevant and highly prejudicial because it did not tend to rebut an insanity defense. We disagree.

"The defense [of insanity] is unrelated to the existence or nonexistence of the elements of the criminal act; thus, where a defendant raises the defense of insanity, the burden remains upon the State . . . to prove . . . the existence of each element ·of the offense beyond a reasonable doubt." *Hornsby*, 152 N.C. App. at 366, 567 S.E.2d at 456. The State was required to present evidence to prove each element of first-degree murder. The conversations between Ms. Pierce and the witnesses related directly to Ms. Pierce's fear of defendant and were admissible to show Ms. Pierce's then existing state of mind at the time she made the statements. *See McHone*, 334 N.C. at 637, 435 S.E.2d at 302. The trial court did not abuse its discretion by admitting the witnesses' testimonies of Ms. Pierce's statements regarding her fear of the defendant.

[4] Because defendant failed to present any argument as to his remaining assignments of error, they are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6). For the foregoing reasons, we find no error.

No error.

Chief Judge MARTIN and Judge TYSON concur.