STATE OF NORTH CAROLINA
v.
CRISTOBAL MARIN ARROYO.
No. COA07-1474
Court of Appeals of North Carolina
Filed July 15, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General John R. Green, Jr., for the State.
James N. Freeman, Jr., for defendant-appellant.
CALABRIA, Judge.
Cristobal Marin Arroyo ("defendant") appeals a judgment entered upon a jury verdict finding him guilty of trafficking in cocaine by possession of twenty-eight grams or more but less than 200 grams of cocaine. We find no error.
On 10 March 2005, defendant left work and drove to La Cocina, a store in the Ashton Square Shopping Center located on Capital Boulevard in Raleigh, North Carolina. Defendant waited in his truck for other customers in La Cocina to finish their transactions. Rodrigo Molina Gutierrez ("Gutierrez"), defendant's co-worker, arrived at La Cocina's parking lot. Defendant called Gutierrez on his cell phone and Gutierrez parked beside defendant in the parking lot. Defendant exited his truck and entered Gutierrez's vehicle. Felix Horacio ("Horacio") was also in Gutierrez's vehicle.
Raleigh Police Officer C.A. Carrigan ("Officer Carrigan") and Raleigh Police Officer Brian Scioli ("Officer Scioli," collectively "the officers") observed defendant and Gutierrez in the parking lot. The officers approached Gutierrez's vehicle and questioned Gutierrez, Horacio, and defendant. Gutierrez was arrested. Officer Scioli noticed the defendant ducked down and made a quick movement in the back seat. The officers asked Horacio and defendant to exit the vehicle. Officer Scioli found a package containing cocaine that was located directly behind and partially underneath the front passenger seat. Defendant was arrested and charged with trafficking cocaine.
At trial, held on 30 May 2006 before the Honorable Orlando F. Hudson in Wake County Superior Court, Gutierrez testified for the State that defendant called him on 10 March 2005 asking to meet him to buy twenty-eight grams of cocaine for $600. Defendant testified that when he was interrogated by police about the ownership of the cocaine, he denied possession or knowledge of the cocaine. At the close of the State's evidence and at the close of all the evidence, defendant moved to dismiss the trafficking charge. The trial court denied both motions.
The jury found defendant guilty of trafficking cocaine by possession of twenty-eight grams or more but less than 200 grams of cocaine. The trial court sentenced defendant to a minimum term ofthirty-five months and a maximum term of forty-two months in the North Carolina Department of Correction. Defendant appeals.

I. Right to Remain Silent
Defendant argues the prosecutor's cross-examination of defendant about his decision not to make a statement to the police violated the Fifth Amendment and warrants a new trial. We find no prejudicial error.
"The Fifth Amendment guarantees an accused the right to remain silent during his criminal trial and prevents the prosecution for commenting on the silence of a defendant who asserts the right."
Jenkins v. Anderson, 447 U.S. 231, 235, 100 S.Ct. 2124, 2127 (1980) (citing Griffin v. California, 380 U.S. 609, 614, 85 S.Ct. 1229, 1232, 14 L.Ed.2d 106 (1965)). However, when a defendant chooses to testify in his own defense, he waives his immunity to be questioned about prior silence. Id. (citing Raffel v. United States, 271 U.S. 494, 46 S.Ct. 566, 70 L.Ed. 1054 (1926)). "A testifying defendant is subject to impeachment by cross-examination, generally to the same extent as any other witness." State v. Lester, 289 N.C. 239, 245, 221 S.E.2d 268, 272 (1976) (holding that where defendant testified on direct about circumstances surrounding defendant's arrest, no error to cross-examine defendant on the arrest).
Our courts distinguish cross-examination of a defendant regarding statements made after his arrest with statements made before his arrest. "Questions about the defendant's silence before he was arrested are not prohibited, though a defendant may not be impeached by inquiries into his refusal to answer questions after he has been arrested." State v. Graham, ___ N.C. App. ___, ___, 650 S.E.2d 639, 648 (Oct. 2, 2007) (No. COA06-837) (citations and emphasis omitted). A defendant who chooses to testify in his own defense does not waive his right to be immune from questioning about his silence to police, where that silence was invoked after his arrest. State v. Lane, 301 N.C. 382, 384, 271 S.E.2d 273, 275 (1980) (citing Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L. Ed. 2d 91 (1976)) (It is "fundamentally unfair to impeach defendants concerning their post-arrest silence after they had been impliedly assured through the Miranda warnings that their silence would not result in any penalty.").
In State v. Shores, 155 N.C. App. 342, 351, 573 S.E.2d 237, 242 (2002), this Court held the State impermissibly questioned defendant about his post-arrest silence to police regarding defendant's self-defense argument. The State's cross-examination and jury argument referencing defendant's silence to the police violated defendant's Fifth Amendment right and warranted a new trial. See also State v. Hoyle, 325 N.C. 232, 237, 382 S.E.2d 752, 754 (1989) (concluding prejudicial error for the State to cross-examine defendant on his silence to police after his arrest); State v. Ward, 354 N.C. 231, 266, 555 S.E.2d 251, 273 (2001) (concluding prejudicial error for the State to assert in closing arguments that defendant kept silent because he did not want to incriminate himself); State v. Durham, 175 N.C. App. 202, 204-06, 623 S.E.2d 63, 65-66 (2005) (concluding prejudicial error for State to reference defendant's post-arrest silence in closing arguments).
However, when the objected testimony is elicited by defense counsel, or where the defendant testifies on direct that he waived his right to remain silent, the State is not prohibited from questioning defendant about those statements on cross-examination. See State v. Erickson, 181 N.C. App. 479, 487, 640 S.E.2d 761, 768 (2007) (concluding no error where objected testimony was elicited by defense counsel not prosecution); State v. Ezzell, 182 N.C. App. 417, 424, 642 S.E.2d 274, 279 (2007) (concluding prosecutor's cross-examination into defendant's post-arrest statements was not unconstitutional where defendant's testimony on direct established he waived his right to silence by answering the officer's questions). In State v. Jennings, 333 N.C. 579, 603-04, 430 S.E.2d 188, 199-200 (1993), defense counsel questioned a police agent about defendant's silence after her arrest. On appeal, defendant argued the agent's testimony violated defendant's Fifth Amendment rights. Our Supreme Court held any error was invited by the defendant since the agent's testimony was elicited by defense counsel.
In the instant case, defendant testified on direct about the circumstances surrounding his arrest. Defendant then testified that after his arrest he was taken to the police station and interrogated:
Q: Okay. You were taken down to the police station and you were questioned with an interpreter; is that correct?
A: Yes, they  they  they interrogated us with the interpreter. . . . they interrogated me by myself, and then they put [Gutierrez] in another room, and they had us in separate rooms.
Q: And did the police ever tell you that [Gutierrez] said that you were there involved with the drugs?
A: Yes, yes, . . . they interrogated me first. . . . I realized that they had not interrogated them first, and they were asking me if I knew who the drugs were  who's the owner of the drugs, and he said, "If you  if you can  if you can tell us who is the owner of the drugs, if it's yours, if it's [Gutierrez]'s or if it's the other guy's, you can get out of here. We'll just let you go." But unfortunately I couldn't . . . make an accusation without knowing who the drugs belonged to. I couldn't make an accusation like that.
Q: And did they tell you . . . that [Gutierrez] said the drugs were yours?
A: Well, yes, they told me that . . . [Gutierrez] or [Horacio] had said that the drugs was [sic] mine, but I didn't know anything. And I was thinking in my mind, how could they accuse me of that. I mean, I don't know anything. And I could understand that the policeman was irritated with me because they have a right to interrogate you if they think that that [sic] belongs to you, but the truth is that I didn't . . . know anything about this, and . . . I couldn't tell them anything that I didn't know anything about. I didn't know.
On cross-examination, the State questioned defendant about his post-arrest statements to police.
Q: And it was your testimony, I believe, that  a few moments ago on direct that at the time the officers took you down to the station, they asked you questions, is that what you testified to, and you gave them answers?
A: Yes, that's true.
Q: And it was this officer sitting behind me, was it not, Mr. Carrigan (indicating)?
A: The one that they . . . gave us to interpret was that one that was here yesterday. . . . And I don't really remember if the one that was there was this one or was the other official. I don't remember.
Q: But at that time do you recall that you chose not to make a statement or answer questions of the officers?
A: I didn't deny anything. . . . I didn't deny any of their questions. The only thing that I told them that I didn't know. I couldn't _ I couldn't answer. I couldn't tell them this or tell them that someone had done it or it belonged to somebody because I didn't know. And that's all I told them; that I did not know.
Q: Do you know why the officer would put in his report that you did not answer questions and you did not make a statement if that wasn't true?
[DEFENSE COUNSEL]: Objection.
THE COURT: Overruled.
[DEFENSE COUNSEL]: You can answer.
. . . .
Q: Do you know why the officer would put in his report that you chose not to answer questions or make a statement if that wasn't true?
A: Well, the truth is that I  I couldn't make a statement about what they were asking me. I answered what they told me, but I couldn't answer what they were asking. I couldn't say  accuse another person because I didn't know. And they gave me a sheet of paper before me. They put a sheet of paper before me that was in Spanish and English and in the letters there it says that everything that I said was going to be used against me, and then I didn't know what I had to answer there. I didn't know what I had to put there, what I was going to write. But I couldn't make that kind of accusation. I did not know.
Later, the State called Officer Carrigan to the stand on redirect. The State asked Officer Carrigan whether he asked defendant any questions. Officer Carrigan testified:
A: Yes. We  as he stated in his testimony, we presented him with a waiver both in Spanish and English, and it was gone over, and, as he indicated, he didn't want to _
[DEFENSE COUNSEL]: Objection
THE COURT: Overruled.
[THE STATE]: Go ahead.
THE WITNESS: He didn't want to sign it. So it was a custodial interrogation, and since he would not waive his rights we did not interrogate him.
BY [THE STATE]:
Q: You didn't ask him any questions?
A: No.
Q: Did he make any statements to you?
A: No.
Here, defendant's testimony on direct did not reveal that he waived his rights, nor was the objected testimony elicited by defense counsel. Defendant testified on direct that he was questioned by police but that he "couldn't tell them anything [he] didn't know anything about." Defendant never testified on direct that he answered the officers' questions, thereby waiving his right to remain silent. Officer Carrigan's testimony further establishes that defendant did not waive his right to remain silent. In addition, the subject matter of the State's cross-examination focused on defendant's decision not to make a statement to police and the State re-emphasized this point in its re-direct examination of Officer Carrigan. The State's questioning of defendant's post-arrest silence was a violation of his Fifth Amendment right. However, in this case the State has met its burden of showing this error was harmless beyond a reasonable doubt.
Violation of a constitutional right is not prejudicial if the error was harmless beyond a reasonable doubt. Lane, 301 N.C. at 387, 271 S.E.2d at 276-77. "Unless there is a reasonable possibility that the evidence complained of might have contributed to the conviction, its admission is harmless." Id. at 387, 271 S.E.2d at 276 (quoting State v. Taylor, 280 N.C. 273, 185 S.E.2d 677 (1972)). In determining whether a defendant's right to silence was violated and whether such error was harmless beyond a reasonable doubt, this Court addresses several factors:
In . . . the context of testimony regarding a defendant's invocation of rights, we have considered the following factors: (1) whether the State presented other over whelming evidence of guilt of the defendant; (2) whether the testimony was elicited by the State or volunteered by a witness; (3) whether the State emphasized the defendant's invocation of rights; and (4) whether the State attempted to capitalize on the defendant's invocation of rights through reference in its closing statement or during cross-examination. State v. Rashidi, 172 N.C. App. 628, 639-40, 617 S.E.2d 68, 76-77,aff'd per curiam, 360 N.C. 166, 622 S.E.2d 493 (2005). Further, this Court has held that questioning which references a defendant's invocation of rights but serves "merely to explain the chronology of the investigation" does not warrant a new trial.State v. Holsclaw, 42 N.C. App. 696, 702, 257 S.E.2d 650, 654, disc. review denied, 298 N.C. 571, 261 S.E.2d 126 (1979).
State v. Christian, 180 N.C. App. 621, 624-25, 638 S.E.2d 470, 472-73 (2006).
Here, the State presented ample evidence of defendant's guilt. Gutierrez testified he handed the cocaine to the defendant and defendant placed the cocaine underneath the seat in front of him. Gutierrez also testified that defendant called him to arrange for the exchange of cocaine and money. Officer Carrigan testified defendant's behavior at the parking lot when he parked and waited for another car to park beside him was consistent with a drug transaction. Officer Carrigan also testified that when defendant saw the officer approach the vehicle, defendant ducked down and sat up very quickly. Officer Scioli testified he saw two bags of narcotics in plain view on the floor of the back seat passenger side door, the same area where defendant was sitting. Furthermore, the State's questioning of defendant's decision to remain silent was prompted by defendant's own testimony on direct and designed to impeach his testimony that he was interrogated by the police after his arrest. Accordingly, this error does not warrant a new trial.

II. Motion to Dismiss
Defendant also argues the trial court erred in denying his motion to dismiss the drug trafficking charge. We disagree.
"Our standard of review of a trial court's ruling on a motion to dismiss for insufficient evidence is whether there is substantial evidence (1) of each essential element of the offense charged . . . and (2) of defendant's being the perpetrator of such offense." State v. Prush, ___ N.C. App. ___, ___, 648 S.E.2d 556, 558 (2007) (quotation marks and citations omitted).
Substantial evidence is relevant evidence which a reasonable mind might accept as adequate to support a conclusion. In ruling on a motion to dismiss, the trial court must consider all of the evidence in the light most favorable to the State, and the State is entitled to all reasonable inferences which may be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal.
State v. Manning, ___ N.C. App. ___, ___, 646 S.E.2d 573, 577 (2007).
Defendant was charged with trafficking by possession of at least 28 grams but not more than 200 grams of cocaine, under N.C. Gen. Stat. § 90-95(h)(3). This statute provides:
Any person who sells, manufactures, delivers, transports, or possesses 28 grams or more of cocaine . . . shall be guilty of a felony, which felony shall be known as "trafficking in cocaine" and if the quantity of such substance or mixture involved:
a. Is 28 grams or more, but less than 200 grams, such person shall be punished as a Class G felon and shall be sentenced to a minimum term of 35 months and a maximum term of 42 months in the State's prison and shall be fined not less than fifty thousand dollars ($50,000).
N.C. Gen. Stat. § 90-95(h)(3) (2007). To support a conviction of trafficking in cocaine by possession, the State must prove that defendant: (1) knowingly possessed cocaine and (2) that the amount possessed was 28 grams or more. State v. Jackson, 137 N.C. App. 570, 573, 529 S.E.2d 253, 256 (2000).
Defendant does not challenge the State's evidence that the package containing cocaine weighed 28 grams or more, therefore we focus our analysis on whether the State presented substantial evidence that defendant knowingly possessed the cocaine. The "knowingly possessed" element of offense of trafficking by possession may be established by showing that: (1) defendant had actual possession; (2) defendant had constructive possession; or (3) defendant acted in concert with another to commit crime. State v. Diaz, 155 N.C. App. 307, 313, 575 S.E.2d 523, 528 (2002), cert. denied, 357 N.C. 464, 586 S.E.2d 271, cert. denied, 357 N.C. 659, 590 S.E.2d 396; State v. Reid, 151 N.C. App. 420, 428, 566 S.E.2d 186, 192 (2002).
A person has actual possession of a controlled substance if it is on his person, he is aware of its presence, and, either by himself or together with others, he has the power and intent to control its disposition or use. Reid, 151 N.C. App. at 428-29, 566 S.E.2d 192. "Constructive possession" of cocaine occurs when a person lacks actual physical possession, but nonetheless has intent and power to maintain control over the disposition and use of the controlled substance. State v. Wilder, 124 N.C. App. 136, 139-40, 476 S.E.2d 394, 397 (1996) (concluding sufficient evidence for jury to infer possession where officer observed defendant throw an object in the bushes and officers recovered bag of cocaine from that location).
Under the theory of constructive possession, a person may be charged with possession of an item such as narcotics when he has both the power and intent to control its disposition or use even though he does not have actual possession. . . . [U]nless the person has exclusive possession of the place where the narcotics are found, the State must show other incriminating circumstances before constructive possession may be inferred.
State v. Davis, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (citation omitted).
Defendant argues because he testified that he did not know the drugs were in Gutierrez's car, he could not have constructive possession of the cocaine, and likewise did not have actual possession of the cocaine. We disagree.
After reviewing the evidence in the light most favorable to the State, we conclude the State presented sufficient evidence of "incriminating circumstances" to establish defendant's constructive possession of the cocaine. Gutierrez testified defendant called him to arrange to purchase cocaine and asked Gutierrez to meet him in the parking lot. Officer Carrigan testified that defendant's actions, parking and entering Gutierrez's parked vehicle, demonstrated behavior consistent with completing a drug transaction. In addition, while defendant was seated in the back seat behind the front passenger seat of Gutierrez's vehicle, the officers observed defendant ducking down and sitting up suddenly. Immediately after defendant exited the vehicle, the officers found a package of cocaine on the floor in the back passenger seat, within reach of where defendant had been sitting. Accordingly, we find no error.
No error.
Chief Judge MARTIN and Judge STROUD concur.
Report per Rule 30(e).