**STATE v. BARBOUR**

[229 N.C. App. 635 (2013)]

STATE OF NORTH CAROLINA
v.
STEVEN LYNN BARBOUR

No. COA12-990

Filed 17 September 2013

1. **Jury—verdict sheet—examination by judge—outside presence of parties—resume deliberations**

    The trial court did not commit plain error in a robbery and homicide case by examining outside of the presence of the parties the verdict sheet returned by the jury, rejecting the verdict, directing the jury to resume deliberations without allowing counsel to examine the jury verdict sheet, and failing to preserve the verdict sheet for the record. The trial court preserved the original answers of the jury on the verdict sheet and the Court of Appeals was able to discern the jury's intent.

2. **Criminal Law—prosecutor's closing argument—no *ex mero motu* intervention required**

    The trial court did not err in a robbery and homicide case by failing to intervene *ex mero motu* during the State's closing argument where the State made one reference to evidence that was not before the jury in its closing argument, and the judge instructed the jury to follow their own recollection of the evidence.

3. **Constitutional Law—right to remain silent—evidence of silence—no error**

    The trial court did not commit plain error in a robbery and homicide case by allowing the State to present evidence of defendant's post-*Miranda* exercise of his right to remain silent where there was no evidence in the record that defendant exercised his right to remain silent. Furthermore, even assuming arguendo that defendant did exercise this right, the State's re-direct examination of a witness was not a comment on defendant's right to remain silent.

Appeal by defendant from judgment entered 29 September 2011 by Judge R. Stuart Albright in Wayne County Superior Court. Heard in the Court of Appeals 8 May 2013.

*Roy Cooper, Attorney General, by Gary R. Govert, Assistant Solicitor General, for the State.*

*Staples Hughes, Appellate Defender, by Anne M. Gomez, Assistant Appellate Defender, for defendant-appellant.*

STEELMAN, Judge.

Where the actions of the trial court preserved the original answers of the jury on the verdict sheet, and we are able to discern the jury's intent, the trial court did not err in directing the jury to resume deliberations without allowing counsel to examine the jury verdict sheet. Where the State made one reference to evidence that was not before the jury in its closing argument, and the judge instructed the jury to follow their own recollection of the evidence, it was not error for the trial court to fail to intervene *ex mero motu*. Where the State's re-direct examination of a witness was not a comment on defendant's right to remain silent, it was not plain error to allow this testimony.

### I.  Factual and Procedural Background

On the morning of 3 December 2009, the body of Jamie Hinson was discovered at the Evergreen Cemetery in Wayne County. The body had multiple areas of blunt force impact, bruises, laceration to the face, broken ribs, fractured fingers, a fractured skull, and six stab wounds to the neck.

On 6 December 2010, Steven Barbour (defendant) was indicted for robbery with a dangerous weapon and the first-degree murder of Jamie Hinson. On 29 September 2011, the jury found defendant guilty of robbery with a dangerous weapon and first-degree murder, based upon felony murder, but not based upon malice, premeditation and deliberation. The trial court arrested judgment on the robbery conviction, and sentenced defendant to life imprisonment without parole for first-degree murder.

Defendant appeals.

### II.  Failure to Preserve the Verdict Sheet

**[1]** In his first argument on appeal, defendant contends that the trial court erred in examining the verdict sheet returned by the jury outside of the presence of the parties, rejecting the verdict, and failing to preserve the verdict sheet for the record. We disagree.

### A.  Standard of Review

Our "statutes do not specify what constitutes a proper verdict sheet [,] ... [n]or have our Courts required the verdict

forms to match the specificity expected of the indictment." A verdict is deemed sufficient if it "can be properly understood by reference to the indictment, evidence and jury instructions." Normally, where the defendant appeals based on the content of the verdict sheet but failed to object when the verdict sheet was submitted to the jury, any error will not be considered prejudicial unless the error is fundamental. Violations of constitutional rights, such as the right to a unanimous verdict, however, are not waived by the failure to object at trial and may be raised for the first time on appeal.

*State v. Wiggins*, 161 N.C. App. 583, 592, 589 S.E.2d 402, 409 (2003) (citations omitted).

For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. *See Odom*, 307 N.C. at 660, 300 S.E.2d at 378. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error "had a probable impact on the jury's finding that the defendant was guilty." *See id.* (citations and quotation marks omitted); *see also Walker*, 316 N.C. at 39, 340 S.E.2d at 83 (stating "that absent the error the jury probably would have reached a different verdict" and concluding that although the evidentiary error affected a fundamental right, viewed in light of the entire record, the error was not plain error).

*State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012).

"The trial judge's power to accept or reject a verdict is restricted to the exercise of a limited legal discretion." *State v. Hampton*, 294 N.C. 242, 247, 239 S.E.2d 835, 839 (1978).

A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2011).

## B. Analysis

After charging the jury, the trial court submitted two issues to the jury: whether defendant was guilty of first-degree murder, guilty of second-degree murder, or not guilty; and whether defendant was guilty or not guilty of robbery with a dangerous weapon. If the jury found defendant guilty of first-degree murder, it was to state whether this was based upon malice, premeditation and deliberation, and whether this was also based upon felony murder. The trial court gave the jury a written copy of its instructions. The jury announced that it had reached a unanimous verdict. The trial court received the verdict sheet, examined it, and then instructed the jury:

> Okay. I've reviewed the verdict sheet.

> I'm going to instruct the jury to ans -- well, let me have the attorn -- well ... Count I, you need to answer yes or no, okay? Beside what your verdict is. If you're find -- well . . . the first question you answer yes or no. Okay?

> The second -- if you've answered the first question no, you go to the second question, and you answer it yes or no. If you answer it no, you go to the third question, which is not guilty, which would be yes. Okay?

> I'm not encouraging or discouraging any answer, but I need you to clearly indicate what your verdict is. Simply answer yes or no as to what your verdict is. Okay?

> Yes means that's your answer for that particular question. No means it's not. Okay?

> Sheriff, if you'll approach the bench. Give the verdict sheet to the jury. Have them return to the jury room to resume deliberations.

The verdict sheet was returned to the jury without further discussion of its contents with the parties, and the jury was sent back to the jury room for further deliberations. The trial court then stated:

> Okay. The Court reviewed -- let the record reflect all 12 jurors have left the courtroom.

> The Court, in reviewing Count I -- Count II had been clearly answered.

> Count II -- Count I, there were scribbles, and there was a circle. There was not a yes or a no as to first degree

> murder, but there were scribbles on it. I did not under-
> stand what it meant. But there was nothing answered, for
> the second question, to second degree murder or for not
> guilty. You heard what I said in response to my reviewing
> the verdict sheet.
>
> The Sheriff then approached me and said that the jurors
> made a mistake and want a new verdict sheet.

The trial court then asked whether either party objected to the instruction it had given the jury. Both counsel responded in the negative. The trial court then asked if the parties had any objections to the fact that the jury had requested a new verdict sheet. Once again, both parties responded in the negative, although defendant requested that if a new verdict sheet was submitted to the jury, that the original verdict sheet be preserved for the record. The trial court then asked:

> THE COURT: What about if I bring the jury back in, for
> the State, and just tell them to write their answers just --
> instead of -- if they've already messed up in the spaces that
> were provided, just write it right next to the space pro-
> vided as opposed to that?
>
> Any objection from the State?
>
> MR. DELBRIDGE: No, sir.
>
> THE COURT: How about from the Defendant?
>
> MR. FISHER: No, your Honor.

Subsequently, the trial court brought the jury back into the court-room and informed it that it would not receive a new verdict sheet. Instead, the jury was directed to "[r]ecord [its] answers in the space next to the space provided." The jury was then sent back to the jury room for further deliberations. Subsequently, there was a conference with the attorneys at the bench, which was not documented in the record.

The verdict sheet offered the jury the option of finding defendant guilty of first-degree murder, based on either malice, premeditation and deliberation and/or felony murder, or second-degree murder, or not guilty; and of finding defendant guilty or not guilty of robbery with a dangerous weapon. On the robbery charge, the jury wrote "yes" in the blank space next to "Guilty of Robbery with a Dangerous Weapon." However, on the murder charge, whatever was originally written in the blank to indicate whether defendant was guilty of first-degree murder was blotted out. Out to the side was written "yes," and it was initialed by the

foreperson of the jury. The original answer as to whether the murder conviction was based upon malice, premeditation and deliberation was blotted out, but in the blank space was written "no." Out to the side of this question, "no" was again written, and initialed by the foreperson. The original answer to whether defendant was guilty of first-degree murder under felony murder was "yes," with none of the answer blotted out. Out to the side, a second "yes" was written. Both "yes" answers were initialed by the foreperson. The trial court's description of these markings was consistent with the verdict sheet contained in the record.

Defendant contends that the trial court's alleged error was a violation of defendant's constitutional right to a unanimous jury verdict. We have traditionally found such error when a jury instruction was sufficiently ambiguous that it was impossible to determine "whether the jury unanimously found that the defendant committed one particular offense." *State v. Lyons*, 330 N.C. 298, 302–03, 412 S.E.2d 308, 312 (1991). In the instant case, however, no such ambiguity exists; the markings on the verdict sheet clearly indicate that, both before and after the trial court's supplemental instructions, the jury had marked "no" on the issue of guilt of first-degree murder based upon malice, premeditation and deliberation, and "yes" based upon felony murder. The jury clearly determined that defendant was guilty of first-degree murder only under the felony murder rule.

While it would have been preferable for the trial court to have excused the jury from the courtroom, and allowed counsel to view the verdict sheet and to be heard prior to the court's instructions to the jury, we can discern no prejudice to defendant based upon what happened following the initial return of the verdict sheet by the jury. By instructing the jury to mark their verdict "in the space next to the space provided," the trial court preserved the original markings on the verdict sheet. As discussed above, the only place where the basis of the first-degree murder verdict was blotted out was that as to malice, premeditation and deliberation. That issue was ultimately answered in favor of the defendant. There can thus be no prejudice to defendant arising out of the actions of the trial court. As to the answer to the question of whether defendant was guilty of first-degree murder under the felony murder rule, this answer was not blotted out, and was clearly and unequivocally answered "yes" by the jury. Given the answer to that question, the jury had to answer the issue of guilty of first-degree murder "yes." We hold that the trial court's handling of the verdict sheet was not error or plain error.

This argument is without merit.

### III. Failure to Intervene in Closing Arguments

[2] In his second argument, defendant contends that the trial court erred by failing to intervene *ex mero motu* during the State's closing argument. We disagree.

### A. Standard of Review

> The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*. In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made.

*State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted).

### B. Analysis

Defendant contends that the State, in its closing arguments, made arguments that were not supported by the evidence. Defendant further contends that the trial court erred in failing to intervene *ex mero motu*.

Defendant called Tracey Deaver to testify at trial. While in prison, Deaver had met Joseph Lanier, who testified for the State that defendant murdered Jamie Hinson. On direct examination, Deaver testified that Lanier told him that he had murdered Hinson. On cross-examination, the State asked Deaver several times whether Deaver had been placed in a separate prison cell due to his complaining of hearing voices. Deaver denied having heard voices, although he admitted to having been placed in a separate prison cell.

In its closing argument to the jury, the State argued that Deaver had heard voices. Defendant contends that this was an improper closing argument, because there was no evidence that Deaver had heard voices.

Defendant did not object to this argument at trial. This is the only portion of the State's argument to which defendant objects on appeal.

**STATE v. BARBOUR**

[229 N.C. App. 635 (2013)]

We fail to see how this one misstatement of fact by the State, alone amidst a sea of arguments not objected to by defendant, was "so grossly improper that the trial court committed reversible error by failing to intervene *ex mero motu*." *Jones*, 355 N.C. at 133, 558 S.E.2d at 107; *see also State v. Barden*, 356 N.C. 316, 346, 572 S.E.2d 108, 129 (2002) (failure to intervene upon reference to defendant's ethnicity was not error); *State v. Fair*, 354 N.C. 131, 153, 557 S.E.2d 500, 517 (2001) (failure to intervene upon challenge to defendant's credibility was not error); *State v. Fletcher*, 348 N.C. 292, 322-23, 500 S.E.2d 668, 685-86 (1998) (failure to intervene upon observation that defendant offered no evidence was not error).

Further, in the instant case, the trial court instructed the jury, "if your recollection of the evidence differs from that of the attorneys, you are to rely solely upon your recollection of the evidence." We have previously held that a defendant could not demonstrate prejudice where the State's closing remarks were cured by the trial court's subsequent instructions to the jury. *State v. Goss*, 361 N.C. 610, 626-27, 651 S.E.2d 867, 877 (2007), *cert. denied*, 555 U.S. 835, 172 L. Ed. 2d 58 (2008). Even assuming *arguendo* that the State's remarks were improper, therefore, this instruction reminding the jury to rely on its own recollection, instead of that of the State, cured any defect.

This argument is without merit.

### IV. Admission of Post-*Miranda* Evidence

**[3]** In his third argument, defendant contends that the trial court committed plain error by allowing the State to present evidence of defendant's post-*Miranda* exercise of his right to remain silent. We disagree.

### A. Standard of Review

"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4); *see also Goss*, 361 N.C. at 622, 651 S.E.2d at 875.

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or " where [the error] is grave error which amounts

to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)) (emphasis in original).

### B. Analysis

The State presented the testimony of Detective Michael Kabler (Kabler) of the Wayne County Sheriff's Department. Kabler had interviewed defendant prior to his arrest, during which time defendant was advised of his *Miranda* rights. On cross-examination, defense counsel examined Kabler at length concerning his interviews of Tara Sparks and Joseph Lanier concerning the murder, and why Kabler didn't discuss the substance of those interviews with defendant.

On re-cross examination, defendant again asked Kabler why he didn't ask to interview defendant at the jail after having spoken with Sparks and Lanier. The State objected to this questioning, and the trial court excused the jury from the courtroom to hear counsel's arguments on the objection. The trial court overruled the objection. After the jury returned to the courtroom, defendant asked Kabler if he could have made an effort to ask defendant about what Sparks and Lanier had said. Kabler responded that it was "possible" that he could have attempted to speak further with defendant.

On redirect, the State asked Kabler:

> Did Steven Barbour, this defendant, ever ask to speak to you after he was arrested? Or anybody else in the Sheriff's Department?

Kabler responded in the negative. Defendant did not object to the question or its answer. Defendant contends that the admission of this testimony constituted plain error, in that it was a comment on defendant's exercise of his right to remain silent.

It is true that "when a person under arrest has been advised of his rights pursuant to *Miranda* . . . there is an implicit promise that the silence will not be used against that person." *State v. Hoyle*, 325 N.C. 232,

236, 382 S.E.2d 752, 754 (1989). However, in the instant case, there is no evidence in the record that defendant exercised his right to remain silent. To the contrary, after being advised of his *Miranda* rights, defendant waived these rights and made statements to the police. Defendant's contention that the testimony elicited by the State violates a constitutional right defendant never exercised is fallacious.

Even assuming *arguendo* that defendant had exercised his right to remain silent, however, the testimony of Kabler was not presented to place defendant's exercise of that right before the jury. Rather, the question was posed to rebut defendant's contentions on cross and re-cross examination that Kabler could have spoken to defendant at any time to discuss Sparks' and Lanier's statements. The State was engaged in redirect examination of the witness. We hold that the trial court did not commit plain error in permitting the State to rebut the issues raised by defendant upon the cross and re-cross examination of Kabler.

This argument is without merit.

NO ERROR.

Judges CALABRIA and McCULLOUGH concur.