CALABRIA, Judge.
Where the evidence would not have permitted the jury to find defendant guilty of a lesser included offense and not guilty of the greater offense, the trial court did not err in denying defendant's request to instruct the jury on the lesser included offense. Where defendant failed to show prejudice resulting from the trial court's admission of a videotaped interview into evidence, the trial court did not commit plain error. Where the State's opening and closing arguments were not grossly improper, and the trial court gave a curative instruction encouraging the jury to rely upon its own recollection, the trial court did not err in failing to intervene ex mero motu during the State's opening and closing arguments. We find no error or plain error.
I. Factual and Procedural Background
On 12 August 2015, Jacob Friot ("Friot") drove to a gas station on Roberts Road in Newport. He saw Shane White ("defendant") putting air in a tire as he arrived. Thomas Watkins ("Watkins") saw defendant run up behind Friot, punch him in the side of the head, and take off running. Watkins drew his weapon when he heard Friot's head strike the concrete, and pursued defendant. Watkins eventually managed to detain defendant, but defendant's companions approached Watkins, who released defendant. Defendant then fled across Roberts Road. When Watkins returned to where Friot was lying on the ground, law enforcement officers had arrived. Watkins described defendant to officers, but they were unable to locate defendant. Friot was taken to the hospital, and Watkins observed that Friot "had blood coming out of his mouth, his ears and his nose." Friot could not be treated at the hospital where he was initially brought, and had to be airlifted by helicopter to a more suitable facility.
Law enforcement officers apprehended defendant the following day, and brought him to the Newport Police Station. Defendant was interviewed, and asked if he would discuss the incident. When he agreed, he was advised of his Miranda rights, including his right to speak with an attorney present. Defendant waived his Miranda rights, and informed police of his relationship with Friot, that some of his friends tried to dissuade him from attacking Friot, and that he did not intend to hit Friot that hard.
On 11 July 2016, defendant was indicted for assault inflicting serious bodily injury. The matter proceeded to trial, and on 9 May 2017, the jury returned a verdict finding defendant guilty of assault inflicting serious bodily injury. The trial court sentenced defendant to a minimum of 28 and a maximum of 43 months in the custody of the North Carolina Department of Adult Correction.
Defendant appeals.
II. Lesser Included Offense
In his first argument, defendant contends that the trial court erred in denying defendant's request that the jury be instructed on the lesser included offense of misdemeanor assault inflicting serious injury. We disagree.
A. Standard of Review
"[Arguments] challenging the trial court's decisions regarding jury instructions are reviewed de novo by this Court." State v. Osorio , 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009).
"An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." State v. Millsaps , 356 N.C. 556, 561, 572 S.E.2d 767, 771 (2002). "Where the State's evidence is positive as to each element of the offense charged and there is no contradictory evidence relating to any element, no instruction on a lesser included offense is required." State v. Thomas , 325 N.C. 583, 594, 386 S.E.2d 555, 561 (1989).
B. Analysis
During the charge conference, defendant requested an instruction on misdemeanor assault inflicting serious injury, a lesser included offense of felony assault inflicting serious injury, the offense with which he was charged. The trial court denied this request. On appeal, defendant contends that this was error.
The question is an evidentiary one, to wit: Whether the evidence would permit the jury to find that Friot's injuries constituted "serious injuries," an element of the misdemeanor charge, and not "serious bodily injuries," an element of the felony charge.
"Serious bodily injury" is defined as
bodily injury that creates a substantial risk of death, or that causes serious permanent disfigurement, coma, a permanent or protracted condition that causes extreme pain, or permanent or protracted loss or impairment of the function of any bodily member or organ, or that results in prolonged hospitalization.
N.C. Gen. Stat. § 14-32.4(a) (2017). In its instruction to the jury, the trial court further narrowed this definition, only permitting the jury to find defendant guilty if the injury "creates or causes a substantial risk of death, permanent or protected [sic] loss of impairment of the function of any bodily member or organ."
By contrast, "serious injury," the element of the misdemeanor offense, is defined as "injury which is serious but falls short of causing death[.]" State v. Williams , 154 N.C. App. 176, 181, 571 S.E.2d 619, 622 (2002). Our courts have further held that " 'serious bodily injury' requires proof of more severe injury than the 'serious injury' element of the [misdemeanor] offense." State v. Hannah , 149 N.C. App. 713, 717, 563 S.E.2d 1, 4 (2002).
Defendant argues that the only evidence regarding the severity of Friot's injuries came from two witnesses-one being Friot himself, and the other being Friot's mother, Andrea Dority ("Dority"). Defendant concedes that Friot's testimony showed that he was in a coma for two weeks, that he was blind in one eye, and that he suffered nerve damage in his neck and permanent numbness in one side. However, defendant contends that Dority's testimony contradicted Friot's, in that she testified that Friot was only in the hospital for two days, that his eyesight had been improving, that he only suffers occasional numbness on his face, and that he did not suffer spinal injuries. Defendant additionally notes that the two disagreed on what kind of follow-up care Friot received, whether Friot had issues with balance, and what treatment Friot received from first responders. Defendant notes that there was no independent, objective evidence to corroborate one narrative or the other, and contends that in light of this contradictory evidence as to the severity of Friot's injuries, an instruction on the lesser offense was appropriate.
The State correctly notes, however, that the testimony was not inconsistent. First, Friot did not actually testify that he was in a coma for two weeks; rather, he said that "I think it was like a week and a half before I even woke up[.]" Friot's confusion was understandable, given that he was unresponsive for an extended period. Nor did Dority testify that Friot was awake and alert after two days; she noted that, on the second day, Friot "was sitting up in the bed[,]" but that he
could not get up or anything. He had no balance or anything like that at all. And he couldn't really see, but he was sitting up. It's-he was drugged up. He-you know, you couldn't really carry on a conversation with him.
Moreover, with respect to Friot's convalescence, defendant characterizes Dority's testimony as suggesting that Friot was "[o]nly in the hospital for two days." This is a mischaracterization of the facts, however; Dority testified that the hospital "said [Friot] could go home as long as he had 24/7 care[,]" and that she was able to use vacation time to stay home and care for Friot "for several weeks."
Similarly, the testimony regarding eyesight was not inconsistent. Friot testified that he was "blind in this eye for probably eight months, but I'm glad I got my vision back." Dority testified that "[h]is eyesight, for many, many, many months, his eyesight-he wasn't aware of it, but I would stand close beside him or get up-side him and I'd be going like this (demonstrating) to see if he could see out this way, because-and he couldn't for a long-until March-March, his eye finally did get a little bit better." Both Friot and Dority testified that Friot's eyesight was severely impaired for many months. Their statements are not contradictory.
With regard to numbness, again, their testimony was not inconsistent. Friot testified that, "right down the middle of your face on the left-hand side, everything is numb." Although she appeared to disagree on the side, Dority testified that the "right side of his face, the feeling didn't come back in that for a good eight months. And it started to come back, but even now ... if he exerts himself too much or he gets stressed too much, he can't talk right." It is clear that Friot suffered either permanent or at least protracted numbness to one side of his face.
With regard to neck or spinal damage, Friot testified that he had nerve damage in his neck, possibly caused by damage to his "vertebrae or something[.]" Dority testified that Friot did not have spinal damage that she knew of, but stated that "he's had problems with his back and his neck since then that he never had before." Again, these are not inconsistent-there is no question that both Friot and Dority testified about damage to Friot's neck.
Next, with respect to follow-up care, defendant contends that Friot did not testify to the extensive follow-up procedures listed by Dority. However, Friot was never asked about the extent of his follow-up care. He was only asked about his neurologist, and testified regarding those visits. This omission does not rise to the level of contradiction.
With regard to Friot's balance, when asked about his injuries other than the loss of eyesight and the numbness, Friot testified that his balance was problematic, "I guess because my equilibrium or whatever, like, I-you just stumbled, kind of stumbled around." Defendant contends that this is inconsistent with the testimony of Dority, who observed that defendant continues to drag his feet while walking, especially "when he's over-exerted himself physically or when he gets stressed." These are not, however, inconsistent. Dority acknowledged that, for a period, she had to walk with Friot to keep him from falling. But once again, Friot was not asked about his continued foot-dragging; that is separate from his balance issues, which mostly seem to have resolved with time.
Finally, defendant contends that Dority testified that Friot received CPR from first responders, and that Friot's testimony contradicts this. However, the question of whether Friot received CPR from first responders is not particularly relevant to the severity of his injuries.
In summary, the evidence from Friot and Dority was not contradictory. It is clear that Friot suffered injuries which resulted in protracted convalescence and invalidity, protracted blindness in one eye, protracted or permanent numbness of one side of the face, an extended period of balance issues, and ongoing care. There is no evidence to suggest that Friot's injuries were "serious injuries" and not "serious bodily injuries." There was therefore no evidence which would "permit the jury rationally to find defendant guilty of the lesser offense and to acquit him of the greater." Accordingly, we hold that the trial court did not err in denying defendant's request to instruct the jury as to the lesser included offense of misdemeanor assault inflicting serious injury.
III. Admission of Evidence
In his second argument, defendant contends that the trial court committed plain error by admitting a videotaped interview into evidence. We disagree.
A. Standard of Review
"In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C.R. App. P. 10(a)(4) ; see also State v. Goss , 361 N.C. 610, 622, 651 S.E.2d 867, 875 (2007), cert. denied , 555 U.S. 835, 172 L.Ed. 2d 58 (2008).
"Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." State v. Jordan , 333 N.C. 431, 440, 426 S.E.2d 692, 697 (1993).
B. Analysis
A videotape of defendant's interview with law enforcement officers was introduced into evidence at trial. This interview included reference to defendant's prior incarcerations for other criminal offenses. Defendant contends that the introduction of this evidence was error. Because defendant failed to object to the introduction of this evidence at trial, we review for plain error.
As a preliminary matter, we note that the State, upon concluding its screening of the video for the jury, noted that some of the material was irrelevant, and sought a curative instruction regarding remarks "about [defendant's] prior involvement with the law." Defendant specifically sought to have those comments stricken. The trial court agreed, and entered a curative instruction with regard to comments made concerning defendant's prior record. "Ordinarily, when incompetent or objectionable evidence is withdrawn from the jury's consideration by appropriate instructions from the trial judge, any error in the admission of the evidence is cured." State v. Pruitt , 301 N.C. 683, 688, 273 S.E.2d 264, 268 (1981).
Even assuming arguendo that the admission of this evidence was error, and that the curative instruction failed to remedy that error, the question remains whether it prejudiced defendant-that is, whether, "absent the error, the jury probably would have reached a different result."
Ample evidence of defendant's guilt was presented at trial. Watkins described the entire event, and identified defendant as the attacker. Similarly, Friot identified defendant as his attacker. Surveillance footage from the store, showing the attack, was played for the jury. There was therefore substantial evidence that defendant attacked Friot. Even absent the allegedly erroneous introduction of the videotaped interview, the jury probably would have reached the same result. We hold that defendant has failed to show prejudice, and therefore that the trial court did not commit plain error in admitting defendant's videotaped interview with law enforcement.
IV. Closing Arguments
In his third argument, defendant contends that the trial court erred in failing to intervene ex mero motu in the State's closing arguments. We disagree.
A. Standard of Review
"The standard of review for assessing alleged improper closing arguments that fail to provoke timely objection from opposing counsel is whether the remarks were so grossly improper that the trial court committed reversible error by failing to intervene ex mero motu . In other words, the reviewing court must determine whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord and: (1) precluded other similar remarks from the offending attorney; and/or (2) instructed the jury to disregard the improper comments already made." State v. Jones , 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002) (citation omitted).
B. Analysis
Defendant contends that, in the State's closing arguments, the State relied only on Friot's descriptions of his injuries, ignoring Dority's testimony which defendant still contends contradicts Friot's. Defendant also alleges that there was "no credible evidence" to support the State's arguments.
First, defendant takes issue with the State's opening statements, in which it said that Friot "did not wake up [after the incident] for a week[,]" that Friot was "treated for spinal injuries[,]" and that Friot had "bleeding on the brain" and "numbness from that injury that will never go away." Defendant contends that these statements were "completely inaccurate or lacked any credible evidentiary support." However, these statements are all reasonable inferences based upon Friot's own testimony. Friot mentioned believing that he was hospitalized for weeks, believing that he had a brain bleed and spinal injuries, and complaining of persistent numbness. The State's statements in its opening were therefore a reasonable forecast of the evidence to come, and not grossly improper.
Defendant also contends that there was "no credible evidence to support the prosecutor's remarks during his closing argument that Friot suffered hematomas [,]" or that "Friot's injuries were so severe that he almost died." In its closing, the State did not make these arguments, but rather charged the jury with using common sense. Specifically, the State argued:
And I would contend to you that there is no death here because it's not a murder case. But I'm-somebody bleeding from the nose and the ears and the mouth and unresponsive, someone who has to be helicoptered immediately to a facility, someone who an intelligent, trained person thought was dead the minute he hit the pavement, again, that-this did cause a risk of it. He didn't die, but certainly, you know, you folks on here with medical training can talk about hematomas and brain injuries and bleeding on the brain. It doesn't take long. You might be here one moment and gone the next.
In essence, the State told the jury to consider the severity of Friot's injuries, and how dangerous injuries to the brain can be. The State did not tell them that Friot suffered a hematoma, nor that Friot actually almost died.
Similarly, defendant takes issue with the characterization of Friot's injuries, such as "evidence that Friot's face 'droops' or that his tongue hangs out." Again, however, this is not accurate. Dority specifically testified that Friot's memory loss was akin to "somebody that had a stroke," and that if Friot grows too stressed, "he can't talk right." The State's comments are a reasonable inference based on Dority's testimony.
Lastly, during its jury instructions, the trial court informed the jury that, "[i]f your recollection of the evidence differs from that of the attorneys, you are to rely solely upon your recollection." This Court has held that an instruction reminding the jury to rely on its own recollection, instead of that of the attorneys, cures any defect in arguments. State v. Barbour , 229 N.C. App. 635, 642, 748 S.E.2d 59, 64 (2013). Accordingly, even if the State's comments constituted an erroneous characterization of the evidence, we hold that the trial court's instruction remedied that error.
In reviewing the challenged statements, and the State's comments as a whole, we do not agree with defendant that the State's remarks were so grossly improper as to require the trial court to intervene. We therefore hold that the trial court did not err in failing to intervene ex mero motu .
V. Conclusion
Notwithstanding defendant's contentions, the evidence concerning the severity of Friot's injuries was not contradictory, and did not support a jury instruction on the lesser included offense of misdemeanor assault inflicting serious injury. The trial court did not err in declining to give an instruction on that offense. Given the substantial evidence of defendant's guilt presented at trial, defendant cannot show that the introduction of the videotaped interview was prejudicial, and the trial court therefore did not commit plain error in admitting it. The State's remarks in its opening and closing were not grossly improper, and even if they were, the trial court's curative instruction resolved any issue. Accordingly, the trial court did not err in failing to intervene ex mero motu .
NO ERROR IN PART, NO PLAIN ERROR IN PART.
Report per Rule 30(e).
Chief Judge McGEE and Judge DIETZ concur.